# State of Vermont v. Gailon A. Joy

[549 A.2d 1033]

No. 85-026

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed April 29, 1988

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Robert Katims*, Legal Intern, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** Following a jury trial in the Washington District Court, defendant Gailon Joy was convicted of one count of embezzlement in violation of 13 V.S.A. § 2531. Defendant appeals his conviction. We affirm.

Defendant Joy was president and sole shareholder of Credit Management Services Corporation (CMS), a debt collection agency. At all relevant times defendant had exclusive control over, and directed the activities of, CMS. CMS contracted with various businesses and credit institutions to collect delinquent accounts for a percentage of the amount collected. Once CMS contracted with a client, CMS was entitled to forty percent of any amount collected on a delinquent account. CMS was entitled to this percentage regardless of whether the debtor paid CMS or settled with the client directly.

As a matter of practice, when CMS received a payment from a debtor, it would deposit the money with a Barre bank and within a month an invoice detailing the transaction would be sent to the client. If monies were due the client, a check would accompany the invoice.

In addition to the bank account with the Barre bank (the Barre account) CMS maintained an account with a Montpelier bank (the Montpelier account). CMS drew on its account with the Montpelier bank to pay its operating expenses, including overhead and payroll expenses.

In late 1980 or early 1981 CMS, suffering financial difficulties, began transferring funds from the Barre account to the Montpelier account to cover its operating expenses. These transfers occurred under defendant's direction. Defendant instructed his bookkeeping personnel to credit client accounts when debts were collected, but not to prepare invoices if there were insufficient funds in the Barre bank account.

In June, 1981, CMS entered into a contract with Stacey Fuel and Lumber Company (Stacey) whereby CMS was to collect several delinquent accounts. On August 14, 1981, CMS received a check from one of Stacey's debtors in the amount of $1,920.25. CMS never forwarded any of this money to Stacey, nor did it inform Stacey that the money had been received. Stacey terminated its relationship with CMS in August, 1982. Subsequently, Stacey

received notice that CMS had filed for bankruptcy and that Stacey had been listed as a creditor of CMS.

On February 17, 1984, the State filed an information charging defendant with ten counts of embezzlement relating to funds belonging to six different clients of CMS. Ultimately, all counts but one were dismissed by the State. The sole remaining count related to the $1,920.25 payment received by CMS for Stacey. Defendant was convicted on this count and filed a timely notice of appeal.

Defendant raises three claims on appeal. First, defendant argues that the trial court erred in its instructions to the jury regarding intent. Second, defendant contends that the State's information was fatally defective. Third, defendant argues that the trial court erred by failing to instruct the jury that the presumption of innocence is a piece of evidence to be considered in the defendant's favor.

In his first claim on appeal, defendant suggests that the trial court improperly refused to charge the jury that "[t]he mere fact that C.M.S. Corporation failed or was unable to pay its creditors is not a sufficient showing of intent to justify conviction [of embezzlement]." Defendant also argues that the trial court erred in failing to instruct the jury that, while intent to repay is not a defense, the jury should consider defendant's intent to repay in determining whether defendant possessed the requisite fraudulent intent to make out the crime of embezzlement. Based on these two claims, defendant also assigns error to the fact that the trial judge instructed the jury "without qualification" that intent to repay is not a defense to a charge of embezzlement.

These specific claims of error are part of defendant's overall point that the trial court erred by failing to charge the jury in a manner consistent with the defense theory of the case. See *State v. Brisson*, 119 Vt. 48, 53, 117 A.2d 255, 258 (1955).

*Brisson* is our leading case on the obligation to instruct the jury on the defense theory of the case. *Brisson* was a DUI case where the State showed that the defendant had failed to successfully perform field sobriety and coordination tests. Defendant claimed that his lack of coordination was the result of illness and introduced evidence to show that his symptoms at the time of his arrest were characteristic of multiple sclerosis. However, the trial judge, in his instructions to the jury, failed to make any reference to the disease as a possible defense raised by the evidence. In re-

versing, this Court held that a jury charge " 'should be full, fair and correct on all issues, theories, and claims within the pleadings so far as the evidence requires.' " *Brisson*, 119 Vt. at 54, 117 A.2d at 258 (quoting *Morse* v. *Ward*, 102 Vt. 433, 436, 150 A. 132, 133 (1930)). Moreover, we noted that failure of a trial court to abide by this mandate could "close[] that course of exploration [by] the jury. [And have] the effect of denying the jury's consideration of the sole issue upon which the [defendant] relie[s] for freedom from criminal liability." *Id.* at 54, 117 A.2d at 258.

*Brisson*, however, is not helpful to the defendant in the instant case. While a trial court clearly must tailor its instructions to the elements of the offense charged in conjunction with defenses fairly raised, there is no requirement that the court charge on a theory not supported by applicable law or the evidence. See *State* v. *Day*, 149 Vt. 165, 167, 540 A.2d 1042, 1043 (1987); *State* v. *Drown*, 148 Vt. 311, 312-13, 532 A.2d 575, 576 (1987).

■ Defendant's main objection to the charge is that it failed to state that the jury could consider intent to repay as evidence that the defendant had no fraudulent intent. The elements of embezzlement are detailed in 13 V.S.A. § 2531, which states in pertinent part that:

> An officer, agent, bailee for hire, clerk or servant of a banking association or an incorporated company, . . . who embezzles or fraudulently converts to his own use, or takes or secretes with intent to embezzle or fraudulently convert to his own use, money or other property which comes into his possession or is under his care by virtue of such employment, notwithstanding he may have an interest in such property, shall be guilty of embezzlement . . . .

The law is clear that intent to repay is not a defense to embezzlement under a statute like ours. See, e.g., 3 Wharton's Criminal Law § 397, at 405-07 (14th ed. 1980). Further, the proposition that defendant's intent to repay should have been considered by the jury in its determination of whether or not he possessed the necessary mens rea is inconsistent with the state of the law. A leading authority on criminal law has observed that "[g]iven a fraudulent appropriation or conversion, an embezzlement is committed even if the defendant intends at some subsequent time to return the property or to make restitution to the owner." 3 Wharton's Criminal Law § 397, at 405-06 (footnote omitted). Likewise,

the Supreme Court of Illinois, in a case quite similar to the instant case, held that "[t]he intention to restore or replace does not make an intentional purloining, secretion or appropriation of the money of another any the less an embezzlement." *People* v. *Riggins*, 13 Ill. 2d 134, 140, 148 N.E.2d 450, 453 (1958) (citation omitted); accord *United States* v. *Shackleford*, 777 F.2d 1141, 1144 (6th Cir. 1985); *State* v. *Piper*, 206 Kan. 190, 193, 477 P.2d 940, 943-44 (1970); *Commonwealth* v. *Bovaird*, 373 Pa. 47, 60, 95 A.2d 173, 178 (1953).

The rationale for this rule was stated by the Pennsylvania Supreme Court in *Commonwealth* v. *Bovaird*:

> Where one is charged with embezzlement or fraudulent conversion, the intention to abstract the money and appropriate it to his own use has been fully executed upon its wrongful taking; the ability and intention to indemnify the party from whom it has been withdrawn remains unexecuted, and such intention, even if conscientiously entertained, may become impossible of fulfillment. The crime is consummated when the money is intentionally and wrongfully converted, temporarily or permanently, to the defendant's own use.

*Bovaird*, 373 Pa. at 60, 95 A.2d at 178; accord *Morrow* v. *Commonwealth*, 157 Ky. 486, 489, 163 S.W. 452, 453 (1914) ("While to constitute the offense of embezzlement it is necessary that there be a criminal intent, yet where the money of the principal is knowingly used by the agent in violation of his duty, it is nonetheless embezzlement because at the time he intended to restore it.") (citations omitted); *Commonwealth* v. *Tuckerman*, 76 Mass. (10 Gray) 173, 205 (1857) (finding of fraudulent intent is not "affected by the consideration [even if well founded] that the defendant, at the time of taking and converting the money to his own use, intended to restore it to the owners . . . ."). Thus, we are not persuaded by defendant's argument that it was error for the trial judge to refuse to instruct the jury that defendant's intent to repay was relevant to the existence or nonexistence of fraudulent intent; there clearly was no error on this point.*

---

\* Some authorities have observed that intent to return the identical property taken is evidence of lack of fraudulent intent, see W. LaFave & A. Scott, Criminal Law § 89, at 653 (1972), or that intent to repay may be relevant to sentencing, see 3 Wharton's Criminal Law § 397, at 409 (14th ed. 1980), but neither of these situations is the case before us now.

The trial judge properly charged the elements of the offense of embezzlement. Regarding intent, the judge stressed that "there must be a fraudulent intent and the State must prove fraudulent intent beyond a reasonable doubt." And the court properly noted that "the intent to embezzle is a state of mind which can be shown by words or conduct."

Defendant also argues that the trial court erred by not instructing the jury that a mere inability or failure to pay creditors is not sufficient to demonstrate the fraudulent intent necessary for the crime of embezzlement. For the same reasons that intent to repay is not relevant to the existence of fraudulent intent, neither is the ability or inability to repay. See, e.g., *Bovaird*, 373 Pa. at 60, 95 A.2d at 178. Moreover, the charge urged by defendant misstates the facts of this case and mischaracterizes his relationship with Stacey.

There is no question that "[in] a debtor-creditor relation, the debtor's failure to pay the creditor does not constitute embezzlement." 3 Wharton's Criminal Law § 402, at 417 (footnote omitted); see also *Kelley* v. *People*, 157 Colo. 417, 420, 402 P.2d 934, 935-36 (1965). However, defendant's relationship with Stacey was not that of debtor-creditor, but rather it was one of agent and principal. See *Rule* v. *New Hampshire-Vermont Health Service*, 144 Vt. 323, 326, 477 A.2d 622, 624 (1984). We are satisfied that the facts and circumstances of this case support defendant's status as an agent of Stacey. The trial court instructed the jury that an agency relationship was critical to the offense charged and that the State was burdened with proving beyond a reasonable doubt that such relationship existed. The court also instructed that "[a] debtor-creditor relationship alone is insufficient to create an agency relationship." The evidence supports a finding of an agency relationship, and the jury so found. Moreover, on appeal, defendant does not argue that he was anything other than an agent of Stacey.

As an agent, rather than a debtor, of Stacey, defendant was obligated to hold and remit to Stacey its percentage of any amounts collected. See *State* v. *Thyfault*, 121 N.J. Super. 487, 498, 297 A.2d 873, 879 (1972); see also Restatement (Second) Agency § 13, at 58 (1958) ("An agent is a fiduciary with respect to matters within the scope of his agency."). In discussing the obligation of an agent to his principal, the Supreme Judicial Court of Massachusetts has noted that the money held by an agent to the ac-

count of his principal "always, and in every shape, belongs to [the principal]." *Tuckerman,* 76 Mass. at 196. The court also stressed that the agent "is at all times the keeper of [his principal's] property" and the agent can never "rightfully set up any claim of ownership to it in himself . . . ." *Id.* Given the existence of an agency relationship — as found by the jury — defendant's conversion of the money credited to Stacey's account was precisely the activity prohibited by the embezzlement statute. See 13 V.S.A. § 2531.

In his second argument on appeal, defendant suggests that the State's information was fatally defective because it failed to allege: (1) the subject matter jurisdiction of the court; (2) the name of the accused; and (3) an essential element of the crime.

Count 7 of the information — the only remaining count at the time of trial — under which defendant was convicted, reads as follows:

> On or about August 25, 1981, was then and there an agent, through Credit Management Services Corp., of Stacey Fuel & Lumber Company, who embezzled and fraudulently converted to his own use $1152.15 that came into his possession by virtue of the employment of Credit Management Services Corp. to collect debts owed to Stacey Fuel & Lumber Company by [a named debtor], in violation of 13 V.S.A. § 2531, against the peace and dignity of the State.

This count is missing the normal identifying information because of the way the beginning of the information is drafted. Count 1 of the information began: "That Gailon Joy, of Warren, Maine, at Montpelier, in Territorial Unit No. 2," and went on to detail the allegation against defendant. The remaining counts did not contain the quoted introductory material. When Count 1 was dismissed, the introductory phrase containing defendant's name and place of residence and the situs of the alleged crimes was omitted.

Defendant contends in this Court that the information was defective in that it failed to allege subject matter jurisdiction in the trial court and failed to include the name of the defendant because of the deletion of Count 1. This argument was not made to the trial court below. We find these arguments to be hypertechnical, without substance, and insufficient to warrant reversal.

In *State* v. *Christman,* 135 Vt. 59, 60, 370 A.2d 624, 625 (1977), we stated that:

Chapter I, Art. 10 of the Vermont Constitution and the Sixth Amendment of the U.S. Constitution confer upon a criminal respondent, in almost identical words, the right to be informed of the cause and nature of the accusation against him. . . . The constitutional test to which conformity is required has been variously stated, but the essential test is that the complaint or other form of accusation of a criminal offense set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense.

■ Consistent with the purpose of an information, as described in *Christman*, V.R.Cr.P. 7(b) indicates that an "information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Reporter's Notes to Rule 7(b) stress that "[t]he basic thrust of the rule is to eliminate technical rules of pleading, with their requirements of precision and detail, in favor of an approach based upon common sense and reason." To the same end, V.R.Cr.P. 12(b)(2) states that "[d]efenses and objections based on defects in the indictment or information" must be raised before trial or they are waived. The only exceptions to such waiver are that the indictment or information "fails to show jurisdiction in the court or to charge an offense." V.R.Cr.P. 12(b)(2). Lack of subject matter jurisdiction and failure to charge an offense "shall be noticed by the court at any time during the pendency of the proceeding." *Id.*

Defendant did not raise the absence of a jurisdictional statement in the amended information prior to trial. He argues, here, that his claim is not waived because of the exception in V.R.Cr.P. 12(b)(2). While he agrees that the Washington District Court had jurisdiction to hear his case, he seeks reversal solely because a statement of such jurisdiction was lacking. We hold that this is the technical type of defect that is waived under the rule if not raised before trial.

The Reporter's Notes to Rule 12 clearly indicate that the reference to jurisdiction in 12(b)(2) is to jurisdiction in fact and not to allegations about jurisdiction. Specifically, the Notes state that "[e]xcepted from the waiver provision of Rule[] 12(b)(2) [is] . . . the defense of lack of jurisdiction (which does not include

venue)." V.R.Cr.P. 12, Reporter's Notes. A mere failure to allege jurisdiction does not create a defense of lack of jurisdiction.

In discussing federal rule 12(b)(2), on which our rule is based, a noted authority has observed that "the courts seem clearly right in holding that it is jurisdiction of the subject matter that is here involved . . . ." 1 C. Wright, Federal Practice and Procedure § 193, at 695 (1982). Also discussing the federal rule, the United States Court of Appeals for the First Circuit observed that it is "the competency of any court to adjudicate the subject matter [that] may always be questioned . . . ." *Pon* v. *United States*, 168 F.2d 373, 374 (1st Cir. 1948). In *Pon* the court went on to say that: "The 'lack of jurisdiction' referred to in this part of the rule obviously refers to jurisdiction over the subject matter, which a defendant has no power to waive." *Id.*

Essentially, defendant asks us to exalt one type of technical defect — the absence of a jurisdictional averment — over all other technical defects. There is neither reason nor substance to this proposal. While a criminal defendant or the court, including this Court on appeal, may at any time raise a lack of subject matter jurisdiction, the technical absence of a jurisdictional statement must be raised before trial or it is waived. Having failed to timely raise this defect in the instant case, it is waived and not available for our consideration. See *State v. Lamelle*, 133 Vt. 378, 379, 340 A.2d 49, 50 (1975).

■ Defendant also alleges error because the amended complaint failed to incorporate his name. Again, this is a technical defect and because it was not raised prior to trial, it is waived. Both the original information and the affidavit to support probable cause mentioned Gailon A. Joy as the accused. The affidavit also captioned defendant's name and stated that the investigator had "probable cause to believe that GAILON ARTHUR JOY has committed the offense[s] of EMBEZZLEMENT (10 Counts), a violation of TITLE 13, Vermont Statutes Annotated § 2531." In *Christman*, we observed that "[a]s a required component of the complaint, fundamental fairness requires that [the affidavit supporting probable cause] be read in connection therewith to determine whether the exact offense charged is 'reasonably' indicated and sufficient to make possible 'intelligent' preparation." *Christman*, 135 Vt. at 61, 370 A.2d at 626. Given this, and given the fact that Gailon Joy was the only person listed as a defendant, it is clear that all parties were aware that Gailon A. Joy was

being called to defend himself against a charge of embezzlement as detailed in Count 7 of the information. Defendant has failed to demonstrate that he was prejudiced in any way by the State's gaffe in first misplacing and then deleting defendant's name from the information. See *In re Stevens*, 146 Vt. 6, 9, 497 A.2d 744, 747 (1985) (defendant must demonstrate that he was prejudiced by insufficient information); *In re Hall*, 143 Vt. 590, 595, 469 A.2d 756, 758 (1983) (exercise of defendant's rights must have been "hampered or frustrated" by procedural shortcomings). The nature of defendant's claim is technical rather than substantive and not having been timely raised, it is waived.

■ As a final attack on the information, defendant contends that when embezzlement is charged in an information, the status of the principal is an essential element which must be included in the charge. Defendant bases this contention on the fact that 13 V.S.A. § 2531 lists eight classifications of principals: a banking association; an incorporated company; a private person; a partnership; a tradesunion; a joint stock company; an unincorporated association; or a fraternal or benevolent association. 13 V.S.A. § 2531. Because the information fails to allege that Stacey Fuel and Lumber Co. is one of the listed types of principals, defendant argues it is defective. The problem with defendant's argument is that the statutory list exhausts the entire universe of possible principals. Thus, any agent who fraudulently converts the property of a principal violates the statute.

Such being the case, the status of the principal is a technical distinction that is not an essential element of the crime and, thus, it need not be included in an information. Certainly, a description of a principal's status is not necessary for a defendant to be apprised of the offense charged and to be able to prepare an intelligent defense. Nor will a failure to mention the status of the principal likely subject a defendant to subsequent prosecution for the same offense. As these are the purposes of an information, see *State* v. *Phillips*, 142 Vt. 283, 288, 455 A.2d 325, 328 (1982), defendant has failed to demonstrate a fatal defect relating to this point. The information did not fail to charge an offense.

■ Finally, defendant seeks reversal due to the fact that the trial judge failed to charge the jury that the presumption of innocence "is a piece of evidence that should be considered with all the other evidence." This argument is ineffective for two reasons. First, we note that defendant did not object to the charge as

given. And, second, our law is clear that so long as a charge accurately reflects the law it may be adequate even if it does not use the exact terms sought by the complaining party. See *State* v. *Hoadley*, 147 Vt. 49, 55, 512 A.2d 879, 882 (1986). In this case, on no fewer than six occasions, the trial judge emphasized to the jury that the defendant was presumed innocent. Thus, viewed as a whole, we find no error in the charge regarding presumption of innocence. Cf. *State* v. *Day*, 149 Vt. at 167, 540 A.2d at 1043.

Based on the foregoing analysis, we conclude that no grounds for reversal exist in this case.

*Affirmed.*

