# State of Vermont v. Richard Brown

[571 A.2d 643]

No. 87-555

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed December 8, 1989

*Kevin G. Bradley*, Chittenden County State's Attorney, *Lauren Bowerman*, Deputy State's Attorney, Burlington, and

*Robert Katims* and *Jo-Ann Gross*, Law Clerks (On the Brief), Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from his conviction, following a trial by jury, of attempted sexual assault in violation of 13 V.S.A. § 3252(1)(A). We affirm.

At trial, the victim of the assault testified that, on January 21, 1986, defendant entered the office in which she worked and sat down beside her desk. Defendant attempted to converse with the victim, but she stated that she had work to do, rose from her desk, and walked to a nearby file cabinet. Defendant approached her from behind, grabbed her by the shoulders, and tried to kiss her. She then told him to "get away," but he became agitated and began fondling her breast. Again, the victim told defendant to "get away and stop it and leave me alone." Instead, defendant dragged her behind a partition, pulled her skirt up, and placed his hand on her thigh and crotch, stating that he found the victim very attractive and that he wanted to make love to her. The victim testified that she continued to resist but could not remember whether she was finally successful in pushing defendant away or whether he let her go; she stated that "all of a sudden, I was free." Defendant eventually left the office, after apologizing for his actions. He was later charged by information with attempted sexual assault.

Defendant was already on probation on an unrelated charge when the information was filed. His probation officer became aware of the charge and asked defendant on two occasions "if he wanted to talk about the charge." On each occasion, defendant indicated that he did not. Later, on July 1, 1986, while defendant was in the probation officer's office pursuant to his obligation on the unrelated charge, the officer asked defendant "what his court status was as far as the pending case." Defendant then made a series of statements regarding the alleged offense. At the time the question was asked, the officer was aware

that the charge was still pending and that defendant was represented by counsel.

When it became clear that the State intended to introduce these statements at trial, defendant filed a motion to suppress. At the suppression hearing, the probation officer testified about his conversation with defendant as follows:

> He mentioned where it was, at, as far as what pending stage it was in, that I don't recall. . . . And he told me some things as I recall that, in the beginning, when this offense was taking place, that [the victim] acted as if she wanted involvement with him. . . . And then he also went on to say that he shouldn't have continued going as far as he did. So initially it was both of them wanted that kind of contact, and then he kept going further when he shouldn't have.

The motion to suppress was denied, and defendant's alleged statements to his probation officer were admitted at trial. On June 11, 1987, defendant was convicted of attempted sexual assault. He was later sentenced to serve three to ten years in jail.

On appeal, defendant raises four arguments for our consideration. First, he contends that the trial court erred in admitting the statements that he made to his probation officer. Second, he maintains that the jury charge was fundamentally deficient because it totally omitted any requirement of a finding that defendant knew he was attempting to compel a sexual act without the victim's consent. Third, defendant challenges the adequacy of the State's information, arguing that it failed to charge him with an offense. Finally, he highlights portions of the prosecutor's final argument and contends that his right to a fair trial was compromised by these remarks.

I.

In *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), the United States Supreme Court held that a criminal suspect who has requested counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* was grounded on the Fifth Amendment, as interpreted in *Miranda*

*v. Arizona*, 384 U.S. 436 (1966), but its "bright-line" rule was explicitly adopted under the Sixth Amendment in *Michigan v. Jackson*, 475 U.S. 625 (1986). In *Jackson*, the Court opined that "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." *Id.* at 631.

■ Here, defendant has no Fifth Amendment claim because he was not in custody when the probation officer questioned him. See *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984).[1] He argues, however, that since he had requested and been assigned counsel prior to the meeting with his probation officer, that officer's question about defendant's "court status" in the "pending case" violated his Sixth Amendment right to counsel under *Jackson*. Defendant's right to counsel and his invocation of that right are undisputed. Because defendant did not initiate the challenged exchange with his probation officer, the critical inquiry is whether the officer's question constituted interrogation. We hold that it did not.

■ The United States Supreme Court first discussed the significance of interrogation and related official activity under the Sixth Amendment in *Massiah v. United States*, 377 U.S. 201 (1964). There, the defendant had been freed on bail after retaining a lawyer and pleading not guilty to federal drug charges. A federal agent installed a radio transmitter in a co-defendant's automobile and intercepted several incriminating statements made by the defendant. At trial, the agent testified regarding these statements, over defense counsel's objections, and the defendant was convicted. On appeal, the Supreme Court characterized the agent's actions as "surreptitious interrogation" and held that:

---

[1] Notwithstanding the absence of a custodial situation, defendant could still invoke the Fifth Amendment if he had been compelled to make the statements at issue. Despite the compulsory aspects of defendant's visit with his probation officer, however, *Murphy* makes clear that statements to a probation officer are not "compelled" within the meaning of the Fifth Amendment unless an individual is required to answer over a valid claim of his Fifth Amendment privilege. *Id.* at 427–40.

> [Defendant] was denied the basic protections of [the Sixth Amendment's] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.

*Id.* at 206. Thus, under *Massiah*, whether post-indictment actions by state officials so interfere with an individual's right to counsel as to violate the Sixth Amendment depends on whether those actions constitute "deliberate elicitation" of incriminating statements. See also *United States v. Henry*, 447 U.S. 264, 270–71 (1980) (where government agents intentionally created a situation likely to induce an indicted defendant to make incriminating statements, by using a fellow inmate as an informant, defendant's Sixth Amendment rights were violated).

In *Maine v. Moulton*, 474 U.S. 159 (1985), the Court made clear that a Sixth Amendment violation could be found even without an intentional "set up" of a defendant by the State. In *Moulton*, one of two individuals accused of several motor vehicle thefts went to police and confessed to the thefts charged as well as other crimes he claimed to have accomplished with his co-defendant. In return for promises that no further charges would be filed against him, the defendant agreed to record all telephone conversations and one planned face-to-face meeting with his co-defendant. Incriminating statements were obtained during the meeting, and evidence of these statements was introduced at the co-defendant's trial. On appeal, the State urged that *Massiah* and *Henry* were not applicable because those cases involved situations intentionally created by the police. The Court disagreed, stating that:

> [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's

right to have counsel present in a confrontation between the accused and a state agent.

*Id.* at 176. The Court emphasized the affirmative nature of the State's obligation to avoid circumvention of an individual's Sixth Amendment rights. *Id.*

Here, the evidence established that defendant's probation officer had been supervising defendant's probation on an unrelated offense and that the two had been meeting on a monthly basis since September of 1985. The probation officer testified at the suppression hearing that, at a routine meeting on July 1, 1986, he had asked defendant "what his court status was as far as the pending case." The officer stated that his purpose in making the inquiry had been to "find out what stage it was at, whether he had a trial date set, or if he was going to plead out or whatever." He testified further that defendant had first "mentioned where [the case] was at, as far as what pending stage it was in . . . ." Only then did defendant begin his incriminating comments.

Those remarks, following defendant's initial answer to his probation officer's routine question, can be characterized only as unresponsive. Further, defendant concedes on appeal that there is no evidence of any ulterior motive on the officer's part, and the record indicates that the officer's first contact with the prosecution took place after the incriminating statements were made.

■ On the basis of this record, defendant has failed to show any evidence that the State deliberately elicited incriminating responses or otherwise knowingly circumvented his right to counsel. As the United States Supreme Court observed in *Moulton*, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Id.* We hold that defendant's statements to his probation officer were not obtained in violation of his Sixth Amendment right to counsel.

■ Defendant also relies upon Chapter I, Article 10 of the Vermont Constitution and 13 V.S.A. §§ 5231–5237, Vermont's public defender statutes, in support of his right to counsel

claim. Contending that *Massiah* and *Moulton* represent subjective standards that produce disparate results, he urges this Court to adopt an objective test under state law to determine when statements obtained from a defendant in the absence of counsel should be excluded from evidence. The test he proposes is based on foreseeability: where it is foreseeable that a question could elicit an incriminating response, any such response would be held inadmissible at trial.[2] We do not rule on this question because we conclude that, even if such a test were adopted, defendant's claim would fail. It could not be foreseen that a question to defendant about the status of his pending case would elicit his opinion regarding the victim's willingness and his regrets about having gone too far.

## II.

■ In the course of charging the jury, the trial court instructed that in order to find defendant guilty, he must be found to have "acted with the specific intent to engage in a sexual act." Defendant maintains that the court should have gone on to charge that even if defendant intended to engage in a sexual act, he would be guilty only if he also knew that he would have been compelling the victim to engage in the sexual act without her consent.[3] No such objection was raised at trial, however. Compounding this failure to bring the matter to the court's attention was defense counsel's inconsistent approach to the compulsion issue. During closing argument, the defense's primary theory was that while an intent to engage in sexual intercourse may have been proved, the State had not proved that defendant's actions had gone far enough towards the commission of an offense to constitute an attempt crime. Defense counsel later seemed to argue, at least implicitly, a lack of guilty knowledge:

---

[2] This formulation is similar to the definition of "interrogation" under Fifth Amendment case law. See *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).

[3] 13 V.S.A § 3252, entitled "Sexual assault," provides in pertinent part:
 A person who engages in a sexual act with another person and
  (1) Compels the other person to participate in a sexual act:
   (A) Without the consent of the other person . . . .

What happened was that at the point that he realized his affections were not reciprocated, and, granted, it was damn slow; granted, he should have realized it sooner, but at the point that he realized her affections were not the same as his, at that point in time, he ceased and resisted from all further contact. He let her go.

Subsequently, however, defense counsel reviewed the elements of the crime charged, and, after presenting his key arguments on several of these elements, he stated:

And the other two elements are that the defendant compelled [the victim] to participate without her consent. Now there is no question, ladies and gentlemen, that his contact, such that it was, was without her consent, so these elements are not important for your considering in arriving at a verdict.

Given this confusing treatment of the compulsion question, the court's later omission of an instruction concerning defendant's knowledge with respect to compulsion cannot be characterized as plain error.

## III.

The State's information stated that defendant "was then and there a person who attempted to engage in a sexual act with another person, to wit: [the victim], by forcibly restraining said [victim], attempting to remove her clothing without the consent of [the victim], attempting to kiss [the victim], attempting to engage in sexual intercourse with [the victim], in violation of Title 13 V.S.A. § 3252(1)(a)." Defendant challenges the adequacy of this information, contending that it failed to charge him with a cognizable offense. We disagree.

### A.

Defendant first maintains that the information was defective because it failed to charge that he did not complete the sexual assault "by reason of being interrupted or prevented." This phrase appears in the text of Vermont's criminal attempt statute:

> A person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of same, shall be punished as herein provided . . . .

13 V.S.A. § 9.

■ An information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." V.R.Cr.P. 7(b). To determine whether the information is sufficient, it must be read in conjunction with the accompanying affidavit of probable cause. *State v. Christman*, 135 Vt. 59, 61, 370 A.2d 624, 626 (1977).

■ Here, the information repeatedly used the words "attempted" and "attempting." When this language is considered in light of the allegations in the affidavit to the effect that the victim continually struggled and pushed defendant until he let her go, it cannot be said that the information's failure to allege specifically that defendant was prevented or interrupted was fatal.[4]

### B.

We also reject defendant's contention that the information was deficient because it failed to allege specifically that defendant attempted sexual assault, that he used compulsion, or that he attempted a "sexual act" as defined by 13 V.S.A. § 3251(1).

■■ An information must provide a defendant with sufficient notice of the offense charged to enable him to prepare an intelligent defense and to avoid double jeopardy. See *State v. Joy*, 149 Vt. 607, 614, 549 A.2d 1033, 1037 (1988). Here, the information referred specifically to the sexual assault statute, alleged that defendant had attempted to engage in a sexual act with the victim, and alleged that he had attempted to engage in sexual intercourse with the victim. With regard to the element

---

[4] At least one court has held that the inclusion of similar language in a criminal attempt statute does not add an additional element to the offense. See *Berry v. State*, 90 Wis. 2d 316, 326, 280 N.W.2d 204, 209 (1979) (phrase "'except for the intervention of another person or some other extraneous factor' does not add an additional, separate requirement that the attempt be thwarted by an outside force").

of compulsion, the information alleged forcible restraint in conjunction with the attempt allegations, and the accompanying affidavit used the words "grabbed" and "pulled" and stated that the victim had struggled. On these facts, defendant cannot claim that the omission of the words "sexual assault" and "compelled" left him inadequately informed as to the nature of the charge.

Defendant's argument concerning the lack of a "sexual act" allegation is based on 13 V.S.A. § 3251(1), which defines this term—subsequently used in the sexual assault statute—to include several specific varieties of conduct. Because the information uses "the generic and ambiguous term 'sexual intercourse,' " defendant maintains, instead of alleging the attempt of a particular sexual act, the charging instrument fails to state an offense. We are not persuaded, however, that defendant's ability to prepare an intelligent defense was compromised by the use of the term "sexual intercourse." Moreover, where a criminal attempt is the subject of an information, "the crime intended need not be set out as fully or specifically as would be required for the completed offense." *People v. Evans*, 125 Ill. 2d 50, 98, 530 N.E.2d 1360, 1381 (1988). We hold that the information at issue here did not fail to state an offense.

## C.

Defendant's final point with regard to the sufficiency of the information is that it failed to allege a culpable mental state. Because mens rea requirements are implicitly included in both the criminal attempt statute, see *State v. Morse*, 130 Vt. 92, 94, 286 A.2d 286, 287 (1971), and the sexual assault statute, see *State v. Hurley*, 150 Vt. 165, 171, 552 A.2d 382, 386 (1988), defendant argues that an information alleging attempted sexual assault must also allege criminal intent.

This Court has held that where a statute does not specify a knowledge or intent element, the omission of the element from a charging instrument does not render it fatally defective. *State v. Roy*, 151 Vt. 17, 29, 557 A.2d 884, 891–92 (1989). Here, moreover, the affidavit of probable cause supporting the information alleged that defendant had stated to the victim that he

"wanted to make love" to her. Taken in combination with the allegations of forcible restraint, the intent to commit the crime of sexual assault was adequately alleged. In sum, we hold that the information at issue here sufficiently supported defendant's trial and conviction.

## IV.

Defendant's final claim of error concerns the propriety of the prosecutor's closing argument at trial. Defendant's counsel set the stage for the challenged remarks by asserting that defendant ceased all contact "at the point that he realized his affections were not reciprocated." The prosecutor responded by stating that:

> Mr. Schwarz mischaracterized the evidence. . . . [His] very astonishing theory is that the defendant is guilty of poor social skills and nothing else. . . . I think that it is ludicrous, and you should be insulted by the bag of goods Mr. Schwarz is trying to sell you. . . . Not only did he mischaracterize the evidence, but give me a break. Mr. Brown has just dragged this woman across her office; has just fought with her for five minutes before it finally sinks in that his affections aren't reciprocated? Ladies and gentlemen of the jury, you were selected for, among other things, because of your intelligence, and you should be insulted by that red herring. You should be outraged. . . . I'm not going to try to characterize the testimony as Mr. Schwarz did because I think it's outrageous.

Defense counsel objected on the ground that the remarks directed toward him were improper and asked for an instruction to that effect. In its charge to the jury, the court instructed as follows:

> I would remind you that what the attorneys say in their arguments is not evidence. . . . And I would also instruct you that it is not proper argument for one attorney or the other to direct comments at opposing counsel. The argument should be directed solely at the evidence in the case. And if your recollection differs from what you may have

■ On appeal, defendant argues that a new trial should be ordered because the prosecutor impermissibly injected personal opinion into her argument to the jury and because she labeled the defense theory as a fraudulent concoction. At trial, however, defense counsel did not object on either of these grounds. During the bench conference foll·wing the objection, the prosecutor argued that it would be erroneous to caution the jury that her rebuttal argument was improper. Defense counsel responded: "I am not saying her rebuttal. I am saying her comments directed towards me were improper." To prevail on appeal, therefore, defendant would have to establish plain error. See *State v. Bubar*, 146 Vt. 398, 403, 505 A.2d 1197, 1200 (1985). Under the plain error standard, defendant "must show that the prosecutor's remarks were not merely improper, but that they probed the outer boundaries of impermissible conduct." *Id.* Although we agree that the challenged statements, taken as a whole, may have been improper, we conclude that they do not constitute plain error.

*Affirmed.*