# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### APRIL SESSION, 1997

FILED

July 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,      )
                         )
      Appellee         )
                         )
vs.                      )
                         )
ERNEST VICKERS, III,     )
                         )
      Appellant        )

No. 02C01-9609-CC-00313

MADISON COUNTY

Hon. FRANKLIN MURCHISON, Judge

(One count of false filing
with the Commissioner of the
Tennessee Department of Commerce
and Insurance; five counts of
securities fraud; five counts of theft)

For the Appellant:

**DANIEL D. WARLICK**
611 Commerce Street
Suite 2712, The Tower
Nashville, TN 37203

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**ALBERT L. PARTEE, III**
Senior Counsel
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**DENNIS GARVEY**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0492

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Ernest Vickers, III, was convicted by a Madison County jury of one count of filing a false document with the Commissioner of the Tennessee Department of Commerce and Insurance, Tenn. Code Ann. § 48-2-121(c); five counts of securities fraud, Tenn. Code Ann. § 48-2-121(a); and five counts of theft, Tenn. Code Ann. § 39-14-103. The eleven judgments of conviction reflect sentences for class C, D, and E felonies.[1] In this appeal as of right, the appellant contends that:

> I. He was denied his constitutional right to a speedy trial;
>
> II. His convictions in the instant case are barred by the doctrine of collateral estoppel;
>
> III. The trial court erred by refusing to charge the jury the defense of "advice of counsel;" and
>
> IV. A material variance existed between counts four and five of the indictment and the proof at trial.

After a review of the record, we conclude that the appellant's contentions are without merit. The judgment of the trial court is affirmed.

## I. Background

Although the appellant does not challenge the sufficiency of evidence, a review of the history of this case is helpful to our consideration of the issues presented. In 1991, the appellant and his wife, Jacqueline Vickers, were indicted on thirty-four counts of securities fraud and theft offenses occurring between December 10, 1987, and September 28, 1990. These charges arose from the appellant's management of an

---

[1] The appellant received varying split confinement sentences in each of the convictions, with all sentences to run concurrently. His effective period of incarceration is 11 months and 29 days in the county jail.

investment company, First National Bancshares Financial Services, Inc. ("Financial Services").[2]  The appellant organized Financial Services to permit him to borrow money from the general public by issuing uninsured certificates of investment or "bancshares certificates."  The certificates of investment were marketed and sold from an office located in the appellant's bank, First National Bank of Jackson.  The appellant's convictions for securities fraud stem from the use of various schemes and devices to induce prospective investors to purchase certificates of investment from Financial Services.

The principle scheme employed by the appellant was the issuance of a "prospectus" to the investing public which overstated the assets of Financial Services and generally misrepresented the financial condition of the investment company.  Through his deception, the appellant was able to convince, in particular, the customers of First National Bank of Jackson, many of whom invested their lifetime savings, to purchase the Financial Services certificates, which were designed to resemble the bank-issued certificates of deposit.  The appellant then directed the investors' money into another corporation, First National Bancshares Corporation, a holding company, from which he was able to provide himself with personal loans totaling approximately 3.3 million dollars.  The appellant's fraudulent and deceptive practices were ultimately discovered.  At the request of the Commissioner of Commerce and Insurance, Financial Services was placed in receivership and a receiver was appointed on September 28, 1990.  The receiver testified that the assets of Financial Services consisted of four vehicles, two of which were in storage, a boat, and a trailer.  On this same date, it was determined that Financial Services owed in excess of 3 million dollars, including 1.8 million owed to its individual investors.  The non cash assets, primarily represented by accounts and notes payable by the appellant and his wife, were essentially worthless.

---

[2]The appellant was the sole stockholder of the First National Bank of Jackson, First National Bancshares Financial Services, and a holding company, First National Bancshares Corporation.

In 1990, an attempt was made by the appellant to negotiate the sale of First National Bank of Jackson in order to cover all outstanding certificates of investment in Financial Services. Efforts to sell the bank proved unsuccessful, the contract for the sale expiring one day before the State filed receivership action.

The appellant was also indicted in Henderson County on similar charges of filing false documents, securities fraud violations, and theft.[3] These charges arose from the sale of Financial Services' "bancshares certificates" in Henderson County. Similar schemes were employed to defraud investors in both Henderson and Madison Counties. The Henderson County charges resulted in an 18 count indictment. A mistrial was declared as to one count of false filing due to the jury's inability to reach a verdict. The jury acquitted the appellant of the remaining 17 counts.

The chronological history of this case, as relevant to the present appeal, follows:

| | |
|---|---|
| **12-10-91** | Indictment 91-1209 returned by a Madison County Grand Jury charging the appellant with 34 counts of securities fraud and theft. |
| **9-28-92** | Indictment 92-927 returned, "superseding" 91-1209, by Madison County Grand Jury charging the appellant with 34 counts of securities fraud and theft.[4] |
| **10-5-92** | Indictment returned by Henderson County Grand Jury on related charges arising from the appellant's business practices in Henderson County. |
| **2-1-93** | "Superseding" indictment obtained in Henderson County. |
| **2-11-93** | The appellant moved for a speedy trial. |
| **3-29-93** | Henderson County indictment amended, 93-095. |

---

[3]Also indicted in Henderson County was the appellant's wife, Jacqueline Vickers, and William J. Boone, his accountant.

[4]We note that both the State and the appellant refer to the later issuing indictments as "superseding" indictments. The record does reflect that both the 1991 and 1992 indictments contained 34 counts. The record before us fails to indicate when the 1991 indictments were actually dismissed.

| | |
|---|---|
| **3-11-93** | Hearing held on motion for speedy trial. |
| **6-21-93** | Motion for speedy trial denied. |
| **3-3 to 21-94** | Henderson County charges tried. The appellant was acquitted of all counts, except for one, which resulted in a mistrial. |
| **12-15-94** | Motion to dismiss Madison County indictment on grounds of double jeopardy and speedy trial. |
| **2-24-95** | Two attorneys from Attorney General's Office appointed special assistant district attorneys to prosecute Madison County case. |
| **1-3-95** | Hearing on motion to dismiss. |
| **5-11 & 12-95** | Motion to dismiss Madison County indictment overruled. |
| **8-8 to 19-95** | Trial in Madison County, State proceeded to trial on 11 counts: 6 securities fraud and five theft.  Jury returned convictions on all counts. |
| **9-22-95** | Sentencing hearing. |
| **10-20-95** | Motion for new trial. |
| **4-22-96** | Motion for new trial denied. |
| **11-6-95** | Judgments of conviction entered. |

## II.  Right to a Speedy Trial

The appellant first contends that he was denied his constitutional and statutory right to a speedy trial.  See  U.S. CONST. amend. VI; TENN. CONST. art. I, sec. 9; Tenn. Code Ann. § 40-14-101 (1990); Tenn. R. Crim. P. 48.  As basis for this contention, the appellant argues that he was originally indicted in December  1991, for offenses occurring between December 10, 1987, and September 28, 1990.  The appellant's trial in Madison County began on August 8, 1995, resulting in a lapse of three years and

5

nine months between indictment and trial. He contends that, due to this delay, he suffered undue prejudice in preparing and presenting his defense. [5]

The speedy trial guarantee of the Sixth Amendment is designed to "minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502 (1982). The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial. United States v. Loud Hawk, 474 U.S. 302, 310-312, 106 S.Ct. 648, 653-654 (1986). This right, however, does not apply during time periods when charges have been dismissed. MacDonald, 456 U.S. at 8-9, 102 S.Ct. at 1502. The appellant correctly argues that he was originally indicted on December 19, 1991. However, these charges were later dismissed, as they were "superseded" by a later indictment, 92-927, returned on September 28, 1992. See supra note 4. Counts 1 through 10, 13 through 16, and 19 through 34, of the "superseded" indictment allege that "the statute of limitations is tolled from December 19, 1991 until September 28, 1992." Thus, as to these counts, the appellant's right to a speedy trial attached on December 19, 1991, causing a delay of approximately three years and nine months between the return of the indictment and the trial. However, his right to a speedy trial for the remaining counts, 11, 12, 17, and 18, did not attach until September 28, 1992, causing a delay of approximately two years, eleven months.

When a defendant contends that he was denied his right to a speedy trial, the reviewing court must conduct a four part balancing test to determine if this right was,

---

[5] We note that the transcript of the hearing on the motion for speedy trial is not included in the record for our review. The appellant is required to have prepared an adequate record in order to allow meaningful review on appeal. Tenn. R. App. P. 24. An appellate court cannot consider an issue which is not preserved in the record for review. State v. Banes, 874 S.W.2d 73 (Tenn. Ct. Crim. App. 1993). Nonetheless, because the motion for speedy trial, the orders denying the motion, and the State's response to the motion are included in the record, we deem the record adequate for appellate review.

indeed, abridged. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192 (1972). This test includes consideration of (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the actual prejudice suffered by the defendant because of the delay.[6] Id.

The length of the delay between indictment and trial is a threshold factor, and, if that delay is not presumptively prejudicial, the other factors need not be considered. Barker, 407 U.S. at 530, 92 S.Ct. at 2192. The delay in the present case was, at most, three years and nine months. *Supra*. While the length of delay, in and of itself, does not constitute a denial of a speedy trial given the complex nature of the charges, a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, note 1 (1992). Thus, the delay in this case requires further review.

Next, we inquire as to the reasons for the delay. Possible reasons for the delay are said to fall within four identifiable categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996).

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered. . . . Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531, 92 S.Ct. at 2192.

---

[6]In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court implicitly adopted the Barker balancing test for purposes of our state constitutional and statutory right to a speedy trial.

7

In the present case, the delay arose from the complex nature of the charges and the need for judicial economy. Specifically, in the June 21, 1993, order denying the appellant's motion, the trial court determined that "a subsequent indictment, returned in Henderson County. . .would lead to a shorter trial and be more convenient to try and was set for trial on August 3, 1993." Furthermore, on May 11, 1995, the trial court overruled the appellant's motion to dismiss his case for lack of a speedy trial, acknowledging that:

> . . .[A]lthough there has been a long delay since the indictment was returned, the length of the delay under the circumstances is not unreasonable and neither defendant has been materially prejudiced. The attorneys on both sides have been diligent, but it has been difficult to coordinate the scheduling of this case in light of the expected trial. Both this judge and the attorneys on all sides have done the best that we could with this case and its companion case in Henderson County. The companion case took four . . . weeks to try in 1994, causing 30-40 cases to be bumped on this judge's docket.

We conclude that the reason for the delay, in the present case, was neutral and valid in nature and should be weighed less heavily against the State.

The third prong of the balancing test, the defendant's assertion of his right to a speedy trial, was initially satisfied by the appellant's motion demanding a speedy trial on February 11, 1993. The defendant's assertion of this right weighs in favor of his claim. Wood, 924 S.W.2d at 347 (citing Barker, 407 U.S. at 531-32, 92 S.Ct. at 2192-93; Bishop, 493 S.W.2d at 85).

Our consideration of the remaining factor, whether the defendant was prejudiced by the delay, focuses upon (1) any undue and oppressive incarceration; (2) the anxiety accompanying a public accusation; and (3) any impairment of the defendant's ability to prepare his defense. State v. Kolb, 755 S.W.2d 472, 475 (Tenn. Crim. App. 1988). The record does not demonstrate any oppressive pretrial incarceration, as the appellant was released on bail pending trial. Furthermore, there is no evidence that the appellant suffered undue anxiety and concern while awaiting trial. However, the most important

8

inquiry remains, i.e., whether the delay impaired the defendant's ability to prepare a defense.

The appellant contends that he has been "severely prejudiced by the delay," in that (1) a key principal witness died prior to trial; (2) the State tried essentially the same case in Henderson County, thereby, learning the appellant's defense; and (3) the elapsed time clouded the memory of witnesses. First, we note that the cases in Henderson and Madison Counties were not the same, in that they involved different dates, different victims, different transactions, different prospectuses and different venues. See, infra Section III. Next, as to his claim that the witnesses suffered memory loss, the appellant urges this court to take judicial notice of the fact that it is difficult, if not impossible, to remember particulars from simple business transactions five years after they have transpired. The record shows no loss of memory by the witnesses. Third, the appellant argues that he suffered extreme prejudice because his attorney, Stanley Huggins, a material witness, died prior to the trial. The State responds that Huggins' testimony, even if available, would not have been admissible as it was not relevant to any issue raised at trial.

The appellant contends that Stanley Huggins would have testified that he provided legal advice to the appellant in August 1990, which included the implementation of a business plan to valuate and sell the principal asset of Financial Services, i.e., First National Bank of Jackson. The appellant argues that the sale of the bank presented a viable method of redeeming outstanding investors' certificates. This argument, however, demonstrates that Huggins' testimony would have been irrelevant in determining whether the appellant had, in fact, filed a false prospectus and then used that prospectus to fraudulently obtain money from his victims. This proposed testimony only deals with the failed effort of the appellant to sell an insolvent bank in the hopes of paying off investors. The defense of "intent to return or repay" money or property has

9

been rejected by the courts of this and other jurisdictions.  See  Switzer v. State, 378

S.W.2d 760 (Tenn. 1964).  See also  United States v. Young, 955 F.2d 99 (1st Cir.

1992);  United States v. Coin, 753 F.2d 1510, 1511 (9th Cir. 1995); United States v.

Angelos, 763 F.2d 859, 861 (7th Cir. 1985);  State v. Joy, 549 A.2d 1033 (Vt. 1988).

Moreover, James G. Simmons, the potential buyer of the appellant's bank, testified at

trial that the sale of the bank collapsed on September 27, 1990, precluding the

possibility of repaying the victims.  Thus, we cannot conclude that the appellant

suffered undue prejudice from Huggins' death.  This issue is without merit.

### III.  Collateral Estoppel

In his next issue, the appellant contends that, because of his acquittal on

seventeen counts in Henderson County,  the doctrine of collateral estoppel precluded

criminal prosecution in Madison County.  Specifically, he contends that both indictments

alleged that the appellant, through his control of Financial Services, caused the filing of

false prospectuses which resulted in the  felonious taking of investors' savings.  The

appellant concedes that the victims in the two  counties were not the same, however,

he maintains that the underlying factual basis for all charges arose from a common

course of conduct and a single sequential course of doing business at Financial

Services.  The State contends that the appellant has waived this issue because this

ground was not argued in the motion for new trial and because the appellant failed to

waive venue.[7]

---

[7]We note that, at the hearing on the motion for new trial, the appellant's trial counsel moved for a new trial upon "the law of the case" doctrine.  Although he did not cite authority or phrase his issue as one of "collateral estoppel," he properly argued the principle of "collateral estoppel."  Accordingly, we elect to address this issue on its merits.

The collateral estoppel effect attributed to the Double Jeopardy Clause of the Fifth Amendment may bar a later prosecution for a separate offense "when an issue of ultimate fact has once been determined by a valid and final judgment." Ashe v. Swenson, 397 U.S. 436, 443-44, 90 S.Ct. 1189, 1194 (1970). "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires the court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. 397 U.S. at 444, 90 S.Ct. at 1194. See also State v. Allen, 752 S.W.2d 515, 516 (Tenn. Crim. App. 1988); State v. Moore, 713 S.W.2d 670, 674 (Tenn. Crim. App. 1985).

However, an acquittal, in order to bar a subsequent prosecution for an offense, must occur in the county in which the offense was committed.[8] 22 C.J.S. *Criminal Law* § 215; See also Tenn Const. art. I, sec IX. Accord State v. Wilson, No. 86-148-III (Tenn. Crim. App. at Nashville, May 5, 1987). In the present case, the crimes were committed in two separate venues, Madison and Henderson. No single court had jurisdiction of the offenses. Thus, the doctrine of collateral estoppel is inapplicable to this case. Moreover, the burden is on the appellant to prove by clear and convincing evidence that, in the earlier trial, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment. See United States v. Bailey, 34 F.3d 683, 688 (8th Cir. 1994); see also United States v. Vaughn, 80 F.3d 549, 551 (D.C. Cir. 1996); Jacobs v. Marathon County, 73 F.3d 164, 167-168 (7th Cir. 1996). The appellant has failed to carry this burden. This issue is without merit.

---

[8]"The trial and conviction or acquittal in one county, of one charged with a criminal offense, is ordinarily no bar to an indictment for the same offense in a different county unless it appears that the offense was committed in the county in which the former trial was had." 22 C.J.S. *Criminal Law* §215.

11

## IV.  "Advice of Counsel"

The appellant next contends that the trial court erred by refusing to charge the jury with the defense of "advice of counsel."  Specifically, he argues that "where all the average businessman does is sign off on complex, complicated, legal documents prepared by licensed CPAs and attorneys, the defense of 'advice of counsel' should be available to the crime of false filing, absent a showing that the defendant misled or misrepresented underlying facts to those professionals."  The State maintains that the appellant has waived this issue because trial counsel failed to submit any special request in writing for a jury instruction as to this defense and because counsel later voiced no objection to the charge as given by the judge.  See  Tenn. R. Crim. P. 30. See also  State v. Haynes, 720 S.W.2d 76 (Tenn. Crim. App, 1986).  We agree. Moreover, as the appellant concedes, our supreme court has previously ruled that the "advice of counsel" defense is not a defense in Tennessee.[9]  Hunter v. State, 12 S.W.2d 361, 362 (Tenn. 1928); State v. Brewer, 932 S.W.2d 1, 17 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1996); State v. Smith, 656 S.W.2d 882, 888-889 (Tenn. Crim. App. 1983).   Accordingly, this issue is without merit.

## V.  Material Variance

In his final issue, the appellant contends that the trial court erred by failing to dismiss counts four and five of the Madison County indictment, charging the appellant with class C theft and securities fraud involving the victim, Sue Cox, on or about April

---

[9]This court is without the authority "to revise, alter, modify, modernize or otherwise change a common law rule created by the Supreme Court."  State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993).

18, 1990, because of a material variance between the indictment and the proof adduced at trial.[10]

When the evidence adduced at a trial does not correspond to the elements of the offense alleged in the charging instrument, there is a variance. State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994). Generally, the evidence establishes the commission of an offense different from the offense alleged in the charging instrument. Id. (citations omitted). The variance rule is predicated upon the theory that an accused cannot be charged with one offense and convicted of a completely different offense. Id.

The proof at trial established that, on April 18, 1990, Ms. Cox invested $21,000.00 in a Financial Services' bancshares certificate. She then permitted the certificate to automatically renew on a monthly basis until it matured on August 21, 1990. On this date, Ms. Cox redeemed her original certificate, keeping a portion of the

accrued interest, and reinvested in a new certificate in the amount of $21,334.37. Thus, the proof establishes two certificates, one issued in April and redeemed in August, and a second issued in August. The appellant contends that these facts

---

[10]Count four of the indictment reads:

. . . [T]hat on or about the 18th day of April, 1990, in Madison County, . . . ERNEST VICKERS did knowingly obtain or exercise control over the personal property of Sue Cox, to wit, twenty-one thousand three hundred and thirty four and thirty-seven cents ($21,334.37) dollars. . . .

Count five of the indictment reads:

. . . [T]hat on or about the 18th day of April, 1990, in Madison County, ERNEST VICKERS, directly or indirectly through his agents and employees, did unlawfully and willfully make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made to Sue Cox, in light of the circumstances under which they were made, not misleading in connection with the sale of a security in the total amount of twenty-one thousand three hundred and thirty-four and thirty-seven cents ($21,334.37) dollars. . . .

support a material variance because the indictment charges the appellant with exercising control over the victim's money in April with the intent to deprive, whereas, the proof revealed that this certificate was redeemed in August. In effect, the appellant argues that, if any taking occurred, it was in August not April. First, the appellant fails to establish a claim of material variance. It is immaterial whether the taking occurred in April or August, both dates being prior to the filing of the indictment. See Tenn. Code Ann. § 40-13-207 (1990). The appellant was indicted in counts four and five for class C and E felonies, respectively, and the proof addressed at trial supports these convictions. Moreover, this issue is waived for failure to cite authority and failure to properly brief the issue. See Tenn. R. App. P. 27(a)(4) - (a)(7). This issue is without merit.

## VI. Conclusion

After reviewing the record and the applicable law, we find the appellant's contentions to be without merit. Accordingly, the judgments of the trial court are affirmed.

14

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
WILLIAM M. BARKER, Judge