IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

**STATE OF TENNESSEE v. NEMON OMAR WINTON**

**Appeal from the Circuit Court for Coffee County**
**No. 41944     L. Craig Johnson, Judge**

_____

**No. M2018-01447-CCA-R3-CD**

_____

Defendant, Nemon Omar Winton, was convicted of two counts of especially aggravated kidnapping, one count of aggravated kidnapping, and one count of aggravated robbery. The trial court imposed a sentence of thirty years for each count of especially aggravated kidnapping, fifteen years for aggravated kidnapping, and fifteen years for aggravated robbery. The trial court ordered the sentences for especially aggravated kidnapping and aggravated kidnapping to be served concurrently with each other and consecutively to the sentence for aggravated robbery for an effective forty-five-year sentence to be served in confinement. On appeal, Defendant argues: (1) that the evidence was insufficient to support his convictions for especially aggravated kidnapping, aggravated robbery, and aggravated kidnapping; (2) that the trial court erred in denying his request for a special jury instruction; and (3) that his sentence was excessive. Upon reviewing the record and the applicable law, we affirm the judgments of conviction for especially aggravated kidnapping and aggravated robbery. We conclude the evidence is legally insufficient to support the conviction of aggravated kidnapping, reverse that conviction and dismiss with prejudice the charge of aggravated kidnapping contained in Count Nine of the indictment. That count is remanded for consideration of appropriate lesser-included offenses, if any, of aggravated kidnapping.

**Tenn. R. App. P. 3 Appeal as of Right; Affirmed in Part; Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

M. Wesley Hall, IV, Unionville, Tennessee, for the appellant, Nemon Omar Winton.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Craig Northcott, District Attorney General; and Joshua Powell

and Jason Ponder, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Background

At approximately 5:00 a.m. on March 8, 2015, Stephanie Trussell arrived at work at Burger King and began preparing food for the restaurant's opening at 6:00 a.m. At some point, Ms. Trussell received a phone call from Defendant asking her for money. She was friends with Defendant and his wife, Amanda Winton, who was an assistant manager at the restaurant. Ms. Trussell told Defendant that she did not have any money, and he hung up. She thought that the call was unusual because Defendant never called her. Ms. Trussell testified that she and other employees continued getting the restaurant ready to open. She said:

> We just unlocked the doors, and Heather [Hill] was in the back. I'm not sure what she was doing. Me and Tabitha [Tomlin] was up front. We just got done counting the registers, and we just heard a loud scream, and we just looked back there, and then we seen him come around the corner, and he told us to get on the ground, and so we did.

Ms. Trussell testified that the man who told them to get on the ground had a gun, was wearing Nike shoes, and "he had some kind of brown bag over his head." She recognized the man's voice as that of Defendant. Ms. Trussell believed that Defendant's gun was real, and she was "terrified."

Ms. Trussell testified that Defendant asked Ms. Tomlin, who was the manager on duty, where she kept the money. Defendant then said, "Take me to it," and he and Ms. Tomlin walked to the back of the restaurant toward the office. Ms. Trussell testified that she was afraid to move until Defendant left the restaurant. She then ran outside and told Freddie Shrum, another employee who had been cleaning the parking lot, what happened, and he called 911. Ms. Trussell then ran across the street, and she saw Defendant run from behind the building toward Wendy's. He got into a white Honda and drove away. Ms. Trussell identified that car as belonging to Defendant's wife, Amanda Winton. Ms. Trussell then went back inside the restaurant. She testified that she had previously seen Defendant at his residence with a gun similar to the one used in the robbery, and he told her that the gun was real.

Heather Hill testified that she arrived at work on March 8, 2015, sometime between 5:00 and 6:00 a.m. and began preparing food. She heard a knock on the back door and thought that it was her fellow employee, Freddie Shrum. As soon as Ms. Hill opened the door, Defendant pointed a gun at her face and said, "Get down on the floor

and put your hands behind your head." He also demanded her cell phone, but Ms. Hill told him that she did not have one. Ms. Hill lay down on her stomach with her hands behind her head. She heard two clicks, which sounded like a "dry fire" of the weapon. Ms. Hill testified that she got a good look at the weapon which "looked like one that you pop the magazine in the bottom." At that point, she was terrified and thought that Defendant was going to kill her.

Ms. Hill testified that Defendant walked to the front of the restaurant, and Ms. Hill remained on the floor and did not move. She said that as Defendant was leaving the restaurant, he pointed the gun at her again and said, "Don't move or I will kill you." He then walked out the back door. Ms. Hill testified that she remained on the floor until police arrived because she was afraid that Defendant would return.

Tabitha Tomlin testified that she arrived to work at Burger King between 4:30 and 5:00 a.m. on March 8, 2015, and began preparing the restaurant to open. She was friends with Amanda Winton and was familiar with Defendant because he was often at the restaurant. She was aware that Defendant called Ms. Trussell that morning and asked her for money. Ms. Tomlin testified she was working and talking to Ms. Trussell when she heard Ms. Hill scream. She said, "[S]o I came out from the area that I was in towards the front, and the next thing I notice is just the gun pointed at us." She could not see Ms. Hill at that point, and she did not know what happened to her. Ms. Tomlin testified that she was afraid when she saw the gun and put her hands up. She said that Defendant told her to get on the ground, and she complied. Ms. Tomlin said that once she got on the ground, Defendant "put the gun to the back of [her] head, and he said, 'Where the f - - k do you keep the money?'" She immediately recognized the voice as belonging to Defendant. Ms. Tomlin testified that she became more afraid when she learned Defendant's identity because she was concerned that he would kill her because she recognized him. Ms. Tomlin told Defendant that the money was in the office in the back of the restaurant. Defendant got her up from the floor and walked her to the office at gunpoint.

Ms. Tomlin opened the safe, which had been on "day lock," and Defendant again told her to lie down on the floor and not move or he would "f - - king shoot [her]." She said that she lay on the ground with her eyes closed "waiting on the gunshot honestly," and she thought that she was going to die. Ms. Tomlin testified that she heard the back door shut, and she lay there for a little longer to make sure that Defendant was gone before she got up. She checked on everyone and went outside. She saw a white Honda at the red light near McDonald's, which she identified as Amanda Winton's car. Ms. Tomlin thought that police arrived "within a matter of a minute or two, just probably two minutes, if that" after the robbery. The video of the robbery was shown at trial, and Ms. Tomlin narrated what happened. Ms. Tomlin testified that all of the bank deposit bags were taken from the safe during the robbery. She said that Defendant called her sometime after the robbery and after she had gone to work somewhere else, begging her

not to testify against him because he was "just so messed up on drugs and everything" at the time of the robbery.

Captain Nilesh Patel of the Manchester Police Department testified that he received a dispatch at approximately 7:00 a.m. on March 8, 2015, stating that Burger King had been robbed. Captain Patel and Sergeant Devon Deford got into Sergeant Deford's patrol car and drove toward Burger King. Captain Patel received a description of the robbery suspect and the car that the suspect was driving and that the car was "possibly headed towards Hillsboro." Sergeant Deford made a u-turn on the overpass and drove toward Hillsboro Boulevard, and Captain Patel watched for the vehicle. He noticed a white car in front of them, and they began following it. Captain Patel testified that the driver of the vehicle ran a stop sign and was driving erratically and well above the posted speed limit. The driver of the car, identified as Defendant, eventually stopped because the vehicle overheated. Captain Patel then took Defendant into custody. Bank deposit bags were found in the middle of the road on Volunteer Parkway where Defendant had driven, and there was a bank deposit bag in Defendant's car underneath the driver's seat. The money in all of the bags totaled $7,965.71.

Andrea Wix was working as a corrections deputy at the Coffee County Jail from July to October, 2015. She spoke with Defendant after his arrest, and he told her that the gun used during the robbery was not real and that it "would [be] in the grass on the side of the road kind of across from the bar that is located in the front of the new jail currently." Deputy Wix located the gun in the grass by the roadway and notified the Manchester Police Department.

Officer Daniel Ray of the Manchester Police Department was the first officer on the scene at Burger King. He testified that the employees were "very, very scared" and told him what happened. Officer Ray later drove to the scene where Defendant had been taken into custody. He advised Defendant of his *Miranda* rights and asked Defendant where the bank deposit bag in the car came from. Defendant said that his wife was a manager at Burger King, and she must have left it in the vehicle. Officer Ray testified that he later went to the scene where the gun was located and retrieved it. He said that the weapon was an Airsoft pistol. Officer Ray was familiar with Airsoft pistols because he used them in SWAT training. He said that police officers like to train with Airsoft "because it has the correct feel of a pistol," and "it looks just like a pistol and feels like a real pistol."

**Analysis**

Initially, the State asserts that Defendant's appeal should be dismissed because his notice of appeal was filed one day late. Defendant's motion for new trial was denied by the trial court on July 9, 2018. Rule 4 of the Tennessee Rules of Appellate Procedure requires that "the notice of appeal . . . shall be filed with the clerk of the appellate court

- 4 -

within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4. The technical record contains a copy of the notice of appeal with a stamp-file date of August 9, 2018, indicating that the notice was filed one day late. However, we note that this court's file contains an envelope showing that the notice of appeal was sent by Defendant via certified mail on August 8, 2018. Rule 20(a) of the Tennessee Rules of Appellate Procedure provides that "[f]iling shall not be timely unless the papers are received by the clerk within the time fixed for filing or mailed to the office of the clerk by certified return receipt mail or registered return receipt mail within the time fixed for filing." Tenn. R. App. P. 20(a). Because Defendant's notice of appeal was sent by certified return receipt mail on August 8, 2018, within the "time fixed for filing," the notice of appeal was timely filed.

### Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to sustain his convictions for especially aggravated kidnapping, aggravated kidnapping, and aggravated robbery because the State did not prove that a "deadly weapon was used nor was one used or fashioned in a way to cause a reasonable person to believe it was a dangerous weapon." Defendant was convicted of the especially aggravated kidnappings of Heather Hill and Tabitha Tomlin. He was convicted for the aggravated robbery of Tabitha Tomlin and the aggravated kidnapping of Stephanie Trussell.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and

reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)).

Especially aggravated kidnapping is "false imprisonment, as defined in [Tennessee Code Annotated section] 39-13-302[,] [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-305(a)(1). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). Aggravated robbery as charged here is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear," when the robbery is accomplished "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-401(a),-402(a)(1). A deadly weapon includes "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(6)(B).

As to the especially aggravated kidnapping and aggravated robbery convictions, Defendant does not dispute that he went into Burger King on March 8, 2015, and took the bank deposit bags containing $7,965.71. His sole argument concerning sufficiency of the evidence is that a "rational trier of fact could not have found the essential element of possession of a deadly weapon or threatens the use of a deadly weapon beyond a reasonable doubt; therefore, 'the evidence preponderates against the verdict of the jury' and as such the conviction should be overturned." The evidence in this case overwhelmingly shows that Defendant used the Airsoft gun in a way "fashioned to lead the victim[s] to reasonably believe it to be a deadly weapon." When Heather Hill opened the back door to Burger King, Defendant pointed the gun at her face and told her to get down on the floor. Ms. Hill heard two clicks, which sounded like a "dry fire" of the weapon. She noted that the gun "looked like one that you pop the magazine in the bottom." She was terrified and thought that Defendant was going to kill her. As Defendant left the restaurant after the robbery, he pointed the gun at her again and said, "Don't move or I will kill you."

Ms. Tomlin testified that Defendant pointed the gun at her and told her to get on the floor. He then put the gun to the back of her head and said, "Where the f - -k do you keep the money?" Ms. Tomlin told him where the money was kept, and Defendant walked her to the office at gunpoint. After Ms. Tomlin opened the safe, and Defendant

- 6 -

took the bank deposit bags, he again told her to lie down on the floor and not move or he would "f- -king shoot [her]." Ms. Tomlin testified that she lay on the ground with her eyes closed "waiting on the gunshot honestly," and she thought that she was going to die. Officer Ray testified that the gun used in the robbery was an Airsoft pistol. He noted that police officers like to train with Airsoft pistols because they have the "correct feel of a pistol," and they look "just like a pistol and feel[] just like a real pistol."

Defendant used the Airsoft pistol in a way which led the victims to reasonably believe it to be a deadly weapon. As such, a rational person could find beyond a reasonable doubt that Defendant committed the offenses of aggravated robbery and especially aggravated kidnapping. Defendant is not entitled to relief on this issue as to these convictions.

As to the conviction for aggravated kidnapping of Stephanie Trussell, a different result is required. The jury found Defendant guilty of this offense as a lesser-included offense of the indicted charge of especially aggravated kidnapping. The count charging especially aggravated kidnapping of Stephanie Trussell alleges as follows:

> The Grand Jurors of Coffee County, Tennessee, duly impaneled and sworn upon their oaths present that Newmon Omar Winton on or about the 8th day of March, 2015, in Coffee County, Tennessee, and before the return of this indictment, did unlawfully and knowingly did remove or confine Stephanie Trussell, said removal or confinement being accomplished by force, threat or fraud, and with a deadly weapon, being a handgun, or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, in violation of T.C.A. 39-13-305(a)(1), and against the peace and dignity of the State of Tennessee.

Thus, as relevant in this appeal, especially aggravated kidnapping required that the evidence establish the following as to Ms. Trussell:

> 39-13-305. Especially aggravated kidnapping.
> (a) Especially aggravated kidnapping is false imprisonment, as defined in § 39-13-302:
>    (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]

T.C.A. § 39-13-305(a)(1).

As pertinent, the elements of aggravated kidnapping which would permit it to be a lesser-included offense of especially aggravated kidnapping *as charged in the indictment* are:

> 39-13-304. Aggravated kidnapping.
> (a) Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed:
>
> \*       \*       \*
>
> (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

T.C.A. § 39-13-304(a)(5).

The only common element of especially aggravated kidnapping and of aggravated kidnapping is the first element of each offense – the false imprisonment of the victim as defined in T.C.A. § 39-13-302. As shown above, Defendant's charged offense of especially aggravated kidnapping was that he committed false imprisonment of Ms. Trussell, which was accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.

There are five different methods to commit aggravated kidnapping, the offense for which Defendant was convicted. In addition to the fifth method quoted above, the statute proscribes false imprisonment committed "(1) To facilitate the commission of any felony or flight thereafter; (2) To interfere with the performance of any governmental or political function; (3) With the intent to inflict serious bodily injury or to terrorize the victim or another; (4) Where the victim suffers bodily injury." T.C.A. § 39-13-304(a)(1)-(4).

In order to be a lesser-included offense, all the elements of the lesser offense must be included in the greater offense or if it differs from the greater offense only in that it contains a statutory element establishing a different mental state indicating a lesser kind of culpability or a less serious risk of harm. *See State v. Howard*, 504 S.W.3d 260, 270 (Tenn. 2016); *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999). T.C.A. § 39-13-304(a)(5) is the only aggravated kidnapping definition that fits the definition of a lesser-included offense of especially aggravated kidnapping as it was charged in the count of the indictment relating to Ms. Trussell.

The State concedes in its argument on the sufficiency of the evidence that the non-lethal Airsoft pistol used by Defendant is not a firearm or any other type of deadly weapon, citing T.C.A. § 39-11-106(a)(5). *See also State v. McGouey*, 229 S.W.3d 668, 673-74 (Tenn. 2007)(In an aggravated assault case, "deadly weapon" did not include an unloaded pellet gun).

An essential element of the offense of aggravated kidnapping as to Defendant's conviction is that he was in possession of a deadly weapon or threatened the use of a deadly weapon. Even though the proof was overwhelming that Defendant committed the greater charged offense as to Ms. Trussell, we can only examine the elements of the *conviction* offense when determining the sufficiency of the evidence to sustain the conviction. *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011).

Accordingly, the evidence is insufficient to sustain the conviction for aggravated kidnapping, and that judgment must be reversed and dismissed, with that count remanded for consideration of any appropriate lesser-included offenses.

*Jury Instruction*

Defendant argues that the trial court erred by denying his request for a special jury instruction stating "that a bb gun is not a dangerous weapon per se." We disagree.

In order to prevail on a claim of improper jury instructions, Defendant must prove that (1) the jury instructions given were an improper and incomplete charge of the law and (2) these instructions resulted in prejudice against Defendant during trial. A defendant has a constitutional right to a full and complete charge of the law. *State v. Walker*, 29 S.W.3d 885, 893 (Tenn. Crim. App. 1999) (citing *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Trial courts have an obligation to give a full instruction concerning the charge of the offense. *Id.* Further, the trial court is not required to give a special instruction if the general jury charge is correct and complete. *State v. Zirkle*, 910 S.W.2d 874, 892 (Tenn. Crim. App. 1995). A jury instruction is prejudicially erroneous "only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)). Challenges to a trial court's jury instructions are mixed questions of fact and law, and therefore are reviewed de novo. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001). Rule 30 of the Tennessee Rules of Criminal Procedure provides for requests for a special jury instruction to be in writing. *State v. Vickers*, 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); *State v. Brewer*, 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996).

The State argues that the record in this case fails to demonstrate that Defendant made a written request for the jury instruction defining a "per se" deadly weapon as permitted by Rule 30 of the Tennessee Rules of Criminal Procedure. At trial, the following exchange took place:

> THE COURT: All right. Also, [trial counsel], you had requested by way of an email a special instruction from an unreported case, I'm assuming, *State vs. Dixon*, in

- 9 -

regards to a BB gun or carbon dioxide powered pellet gun is not a deadly weapon per se. It appears from the holding of that unreported case that it requires evidence to prove whether or not a BB gun could be considered a deadly weapon, but there is also other elements of the indicted crime and the lesser included offenses that talk about whether or not it is fashioned or displayed to convince or for the victim to perceive it to be a deadly weapon, so I am not going to charge that. I mean, you can obviously argue that, but I am not going to charge it because then - - you know, most folks don't necessarily know what "per se" mean, so then we could get into the definition of "per se." I think that's a question of fact for the jury to decide whether or not the elements of the indicted charge or lesser included offenses were met.

[Trial counsel]: (Nodded head up and down).

Although the trial court mentioned an email from trial counsel concerning the special jury instruction, neither the email nor any other written request for jury instructions appears in the record on appeal. As this court has repeatedly stated, it is the appellant's duty to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court which forms the basis of his appeal. *See* Tenn. R. App. P. 24(b). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Because the record does not show that Defendant made a request for the special jury instruction in writing, this issue is waived. *See* Tenn. R. Crim. P. 30(a); *State v. Leath*, 461 S.W.3d 73, 107 (Tenn. Crim. App. 2013)(citing *State v. Mackey*, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982)(stating that Rule 30 "envisions that such requests be made in writing" and that oral requests for instructions are not sufficient for an appellant court to find error by the trial court for rejecting a requested jury instruction)); *Vickers*, 985 S.W.2d at 8; *Brewer*, 932 S.W.2d at 15. We also decline to review the issue for plain error.

*Sentencing*

Defendant contends that his sentence is excessive. He does not challenge the trial court's findings concerning enhancement and mitigating factors or the court's reason for imposing partial consecutive sentences. Instead, Defendant cites to the purposes and principles of the Sentencing Reform Act of 1989 codified in T.C.A. §§ 40-35-102 and 40-35-103. He contends that the "punishment imposed does not fit the crime or the offender." Defendant further argues that "it is clear that such a sentence is excessive and

fails to take into account the trial court's duty to consider the economic impact of the sentence as a fiduciary of the State," and "[g]iven the great need to preserve the State's limited resources the minimum sentence available under the law is sufficient to ensure the interests of the Sentencing Reform Act are met."

Our standard of review of the trial court's sentencing determinations is whether the trial court abused its discretion, and we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2017), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*; *Bise*, 380 S.W.3d at 705.

Here, the record reflects that the trial court in sentencing Defendant applied two enhancement factors: Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; and Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(1) and (8). Defendant does not challenge the enhancement factors, and the record reflects that they were appropriately considered. The trial court also found no mitigating factors. T.C.A. § 40-35-113.

Defendant faced a sentencing range of twenty-five to forty years as a Range II, multiple offender for each conviction of especially aggravated kidnapping, a Class A felony, and twelve to twenty years for the convictions of aggravated robbery and aggravated kidnapping, both Class B felonies. T.C.A. §§ 40-35-106 and 40-35-112(b)(1)(2). The trial court imposed a sentence of thirty years for each count of

especially aggravated kidnapping and fifteen years each for aggravated kidnapping and aggravated robbery. The trial court ordered the sentences for especially aggravated kidnapping and aggravated kidnapping to be served concurrently with each other but consecutively to the sentence for aggravated robbery for an effective forty-five year sentence to be served in confinement.

Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for the sentences imposed, and all of Defendant's sentences are within the appropriate ranges. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Therefore, the trial court's imposition of the less than the maximum sentences for each of Defendant's convictions is presumed reasonable.

As for partial consecutive sentencing, the trial court in this case found that Defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood and that Defendant is an offender whose record of criminal activity is extensive. The trial court noted that Defendant has "six (6) prior felony convictions and other misdemeanor convictions." *See* T.C.A. § 40-35-115(b)(1)-(2). Defendant does not challenge the two factors applied by the trial court to support partial consecutive sentencing, and the record reflects that they were appropriately applied.

We conclude the trial court did not err when it imposed an effective forty-five-year sentence. We note that Defendant's argument that the cost of his lengthy sentence is financially burdensome is not persuasive. *See State v. Paul Brent Baxter*, No. M2015-00939-CCA-R3-CD, 2016 WL 2928266, at *6 (Tenn. Crim. App. May 16, 2016)("As for the Defendant's argument about the cost of his incarceration, it neither overcomes the presumption of reasonableness nor demonstrates an abuse of the trial court's discretion."). Defendant is not entitled to relief.

CONCLUSION

Based upon the foregoing analysis, we affirm the judgments of conviction for especially aggravated kidnapping and aggravated robbery. We conclude the evidence is legally insufficient to support the conviction of aggravated kidnapping, reverse that conviction and dismiss with prejudice the charge of aggravated kidnapping contained in Count Nine of the indictment. That count is remanded for consideration of appropriate lesser-included offenses, if any, of aggravated kidnapping.

_____
THOMAS T. WOODALL, JUDGE