IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2025 Session

## STATE OF TENNESSEE v. WILLIAM GOLDSBERRY, JR.

**Appeal from the Circuit Court for Henderson County**
**Nos. 96-305-2, 96-307-2, 96-309-2          Donald H. Allen, Judge**

———————————————————

### No. W2025-00111-CCA-R3-CD

———————————————————

The Defendant, William Goldsberry, Jr., appeals the Henderson County Circuit Court's revocation of his probation. On appeal, the Defendant argues that the trial court erred by denying his motion to dismiss the violation of probation warrant due to a violation of his speedy trial rights and by revoking his probation in full, contending that the evidence was insufficient to establish he committed a non-technical violation. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which KYLE A. HIXSON, J., joined. CAMILLE R. MCMULLEN, J., filed a separate dissent.

Joshua V. Lehde, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Jeremy B. Epperson, District Public Defender; and Matthew Moore, Assistant District Public Defender (at revocation of probation hearing) for the appellant, William Goldsberry, Jr.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Eric Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

The Defendant, William Goldsberry, Jr., pled guilty to felony escape, vandalism, burglary, and felony theft on February 3, 1997. The trial court sentenced the Defendant to

serve one year in incarceration followed by five years' supervised probation, yielding an effective sentence of six years. The Defendant's supervised probation was transferred to Kern County, California on October 13, 1999. The Defendant's sentence was scheduled to expire on June 23, 2002.[1]

In a letter dated May 23, 2001, the Kern County Probation Department notified Tennessee probation officials that the Defendant's courtesy supervision had been terminated because the Defendant was not a permanent resident of the supervising county and because the Defendant failed to report to his scheduled appointment on May 4, 2001. The letter further noted that the Defendant had not reported to the Kern County Probation Department since May of 2000 and reported his residential address as being in a different part of California.

On July 20, 2001, the trial court issued a warrant for the Defendant's arrest, alleging that the Defendant violated the terms of his probation by failing to report "since May 2000." The violation of probation warrant was served on October 30, 2024. A subsequent violation of probation warrant was issued on November 19, 2024, alleging that the Defendant committed new criminal offenses in Oklahoma in late 2001 and in California over several years while on probation for his Tennessee convictions.

The Defendant filed a motion to dismiss the violation of probation warrant on December 17, 2024, arguing the State had violated his right to a speedy trial by neglecting to execute the violation of probation warrant for twenty-three years. The trial court held a hearing on the original and amended violation of probation warrants on December 19, 2024.

The sole witness at the hearing was Tracye Maness.[2] Ms. Maness testified she was assigned to supervise the Defendant's probation beginning in 1997. After receiving the May 23, 2001 letter from the Kern County Probation Department, she obtained the July 20, 2001 violation of probation warrant, which alleged that the Defendant had failed to report since May of 2000. Ms. Maness testified she obtained an amended violation of probation warrant in November 2024, alleging that the Defendant had been convicted of new offenses in Oklahoma and California.

---

[1] The only judgment form in the record is for the conviction of felony escape, for which the trial court imposed a two-year sentence. However, the record includes an order from the trial court outlining the rules of probation, the total length of the sentence, and the expiration date of the sentence. Although incomplete, the record is sufficient for a meaningful review of the issues presented on appeal.

[2] We note that the transcript and record alternatively spell this witness's first name as "Tracye" and "Tracy." We will refer to her as "Tracye," the spelling used in the violation of probation warrant.

Ms. Maness testified that on October 5, 2001, the District Court of Pittsburg County, Oklahoma, entered a deferment order stating that the Defendant had entered a plea of *nolo contendere* to feloniously pointing a firearm and two counts of public intoxication. Pursuant to the order, the District Court dismissed one of the counts of public intoxication, and the Defendant's sentence for the remaining counts was deferred for five years, until October 4, 2006. A copy of the District Court's order, as well as the May 23, 2001 letter from the Kern County Probation Department, was introduced at the hearing.

Ms. Maness testified that the Defendant was also convicted of other offenses in California while serving his Tennessee probation. She stated she called the appropriate district attorney's office in California to learn more about the Defendant's California convictions. Although the district attorney's office provided her with "the information[,]" she was unable to procure copies of the Defendant's judgment forms for those convictions.

On cross-examination, Ms. Maness testified that she did not know if a detainer had been lodged against the Defendant in 2001, when the original violation of probation warrant was issued, or at any other time since. She recalled that in October or November of 2024, she was notified by a public defender in California that the Defendant had been taken into custody. Ms. Maness thereafter obtained the amended violation of probation warrant which alleged that the Defendant had violated the terms of his probation by subsequently being convicted of offenses in Oklahoma and California.

The parties then presented arguments to the trial court. Relying primarily on *State v. McBrien*, No. W2021-00158-CCA-R3-CD, 2022 WL 1025068 (Tenn. Crim. App. Apr. 6, 2022), *no perm. app. filed*, and *Barker v. Wingo*, 407 U.S. 514 (1972), the Defendant argued that the violation of probation warrants should be dismissed due to a violation of his right to a speedy trial. Specifically, the Defendant claimed that he was in custody in Oklahoma on October 5, 2001, three months after the initial violation of probation warrant was issued. He asserted that if the State had placed a detainer on him when the violation of probation warrant was issued, then he would have been transported to Tennessee to hear the violation allegations at that time, or else following his subsequent arrests in California. The Defendant further argued that there was no proof that he had been subsequently convicted of offenses in California, as alleged in the amended violation of probation warrant. The Defendant also argued that no proof was introduced that the Defendant had failed to report to probation in California until Ms. Maness received the letter from Kern County. The State argued that the motion to dismiss should be denied because the delay in prosecuting the violation was caused by the Defendant's absconding.

The trial court found that the Defendant had absconded from probation beginning in May of 2000 and had been convicted of feloniously pointing a firearm and public intoxication in Oklahoma in 2001. However, the trial court concluded that the State had

- 3 -

failed to prove that the Defendant had been subsequently convicted of offenses in California, as alleged in the amended violation of probation warrant. The trial court found that no delay had been caused by the State, implicitly denying the Defendant's motion to dismiss for a violation of his speedy trial rights. The trial court then revoked the Defendant's probation and ordered the Defendant to serve the balance of his original six-year sentence. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant argues that the trial court erred by denying his motion to dismiss the violation of probation warrant due to a violation of his speedy trial rights and by revoking his probation in full, contending that the evidence was insufficient to establish that the Defendant committed a non-technical violation. The State responds that the trial court properly denied the Defendant's motion to dismiss because the Defendant's speedy trial rights were not violated and that the Defendant's claim regarding the technical nature of his violation of probation is waived. The Defendant, in his reply brief, argues that he is entitled to plain error review of his latter claim. We will consider these issues in turn.

### A.  SPEEDY TRIAL

The Defendant first argues that the trial court erred by denying his motion to dismiss the violation of probation warrant because his right to a speedy trial was violated. Specifically, he argues that the length of the twenty-three-year delay between the issuance of the violation of probation warrant and its prosecution is presumptively prejudicial; that the reason for that delay is due to bureaucratic neglect and indifference; that he promptly asserted his right to a speedy trial on the violation of probation warrant; and that he was prejudiced by the twenty-three-year delay. The State responds that the trial court properly denied the Defendant's motion to dismiss.

In consideration of these arguments, we perceived a related but unbriefed issue regarding the Defendant's right to a speedy trial. Appellate courts generally have jurisdiction to consider only those issues which are properly preserved and presented for appellate review pursuant to preservation requirements and the party-presentation principle. *State v. Bristol*, 654 S.W.3d 917, 923 (Tenn. 2022) (citing Tenn. R. App. P. 13(b)). Nevertheless, this court may consider an unpresented or unpreserved issue in order to prevent needless litigation, injury to the interests of the public, and prejudice to the judicial process, Tenn. R. App. P. 13(b), and must "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires," Tenn. R. App. P. 36(a). This discretion is to be exercised sparingly, and only in those cases where consideration of an unpresented or unpreserved issue is necessary "to achieve fairness and justice." *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015). When this court considers an

unpresented or unpreserved issue, it must give the parties to the appeal "fair notice and an opportunity to be heard on the dispositive issues." *State v. Harbison*, 539 S.W.3d 149, 165 (Tenn. 2018); *see also Bristol*, 654 S.W.3d at 927-28 ("At a minimum, an appellate court must give the parties notice of the specific issue it intends to address and sufficient time to review the record, conduct research, and prepare an argument *before* the court rules on the issue.") (emphasis in original). This requirement is generally satisfied through supplemental briefing. *Bristol*, 654 S.W.3d at 928. Accordingly, we ordered the parties to prepare supplemental briefs to address the following questions:

(1) What triggers a defendant's right to a speedy trial in relation to a violation of probation, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution?

(2) Relative to this case, from what date should this court calculate any delay in the prosecution of the Defendant's violation of probation?

The Defendant argues in his supplemental brief that this court should follow *Allen v. State* for the proposition that a defendant's speedy trial rights are implicated upon the issuance of a violation of probation warrant. *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974); *see also State v. Hutchings*, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *6 (Tenn. Crim. App. Jun. 16, 2009), *no perm app. filed*. He concludes, therefore, that this court should find that the issuance of the first violation of probation warrant on July 20, 2001, triggered the Defendant's speedy trial rights.

The State counters in its supplemental brief that this court should follow *State v. Moon* and *State v. Tillery*, which held that speedy trial rights for violations of probation are not triggered until a warrant is served. *See State v. Moon*, No. M2023-01192-CCA-R3-CD, 2025 WL 1672885, at *11 (Tenn. Crim. App. Jun. 13, 2025), *perm. app. pending*; *State v. Tillery*, No. E2000-01996-CCA-R3-CD, 2001 WL 921754, at *2 (Tenn. Crim. App. Aug. 16, 2001), *perm. app. denied* (Tenn. Jan. 14, 2002). Therefore, the State submits that this court should calculate any delay from October 30, 2024, the date the violation of probation warrant was served.

The right to a speedy trial in all criminal prosecutions is guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"); Tenn. Const. art. I, § 9 (providing "[t]hat in all criminal prosecutions, the accused hath the right to . . . a speedy public trial[.]"). Furthermore, Tennessee has, by statute, guaranteed the right to a speedy trial: "In all criminal prosecutions, the accused is entitled to a speedy trial[.]" Tenn. Code Ann. § 40-14-101. This right to a speedy trial is explicitly designed (1) to protect against undue and

oppressive incarceration prior to trial, (2) to minimize anxiety and concern of the defendant that accompanies public accusations, and (3) to limit the possibility that the defendant's ability to defend himself will be impaired due to the loss of evidence or diminished memory. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *U.S. v. Ewell*, 383 U.S. 116, 120 (1966); *see also State v. Bishop*, 493 S.W.2d 81, 85 (Tenn. 1973).

The standard of appellate review for a trial court's ruling regarding a defendant's claim of a violation of his or her right to a speedy trial is layered. *State v. Moon*, 644 S.W.3d 72, 78 (Tenn. 2022). Although we review the trial court's conclusions of law *de novo*, we defer to its findings of fact unless the evidence preponderates against those findings. *Id*.

The relevant language of the Sixth Amendment to the United States Constitution, Article I, section 9 of the Tennessee Constitution, and Tennessee Code Annotated section 40-14-101 makes it clear that speedy trial rights are implicated only in criminal prosecutions; all three provisions explicitly confine the protection to "all criminal prosecutions." U.S. Const. amend VI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-14-101. The Tennessee Supreme Court has specifically held that violations of probation constitute criminal prosecutions for purposes of speedy trial rights under the Tennessee Constitution. *Allen*, 505 S.W.2d at 719 ("[W]e expressly hold that a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant . . . has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'").

When determining if a defendant's speedy trial right has been violated, this court must apply the four-part balancing test outlined in *Barker*, 407 U.S. at 530, which the Tennessee Supreme Court adopted in *Bishop*, 493 S.W.2d at 83-85. The *Barker* factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant because of the delay. *Barker*, 407 U.S. at 530. If a trial court concludes that the accused has been denied the right to a speedy trial, the appropriate remedy is dismissal of the indictment. *See Barker*, 407 U.S. at 522; *Bishop*, 493 S.W.2d at 83. We will now apply this test to the Defendant's case.

### 1. Attachment of the Right to a Speedy Trial

The first factor to consider is the length of the delay in the prosecution. The length of the delay is what triggers the inquiry under the remaining factors in *Barker*. *State v. Utley*, 956 S.W.2d 489, 494 (Tenn. 1997). There is no threshold for showing that a delay has occurred under *Barker*, but "the line of demarcation depends on the nature of the case." *Id*. However, a post-accusation delay of one year or more is "presumptively prejudicial"

and will trigger a speedy trial inquiry. *Id*. Consideration of this first factor is crucial to the resolution of a defendant's claim that his or her right to a speedy trial has been violated; unless the defendant can show that the length of the delay is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S at 530. As a preliminary matter, therefore, we must determine whether the Defendant's right to a speedy trial attached upon the issuance or the service of the violation of probation warrant, or at some other time.

As noted above, there is a split of authority among this court's opinions as to when a defendant's right to a speedy trial attaches in the context of a prosecution for a violation of probation. The Defendant relies upon the Tennessee Supreme Court's decision in *Allen*, as well as subsequent opinions from this court, interpreting it in support of his argument that the Defendant's right to a speedy trial attached upon the issuance of the July 20, 2001 violation of probation warrant. The State responds that the Tennessee Supreme Court's decision in *Utley*, rather than *Allen*, is binding, and relies upon it, as well as subsequent opinions from this court, in support of its argument that the Defendant's right to a speedy trial attached upon the October 30, 2024 service of the violation of probation warrant. As explained below, we agree with the State that the Defendant's right to a speedy trial attached upon the service of the violation of probation warrant. We further conclude that *Allen* and *Utley* may be read together in the context of probation violation proceedings. In support of this conclusion, we find it necessary to examine more closely what *Allen*, *Utley*, and their respective progenies held.

In *Allen*, the defendant pled guilty to a burglary offense in Marshall County on April 1, 1968, and received a sentence of three to five years' incarceration, which was subsequently suspended to four years' probation. *Allen*, 505 S.W.2d at 716. On March 8, 1970, slightly less than two years later, the defendant assaulted a police officer in Davidson County and was charged and later convicted of assault with the intent to commit murder, for which he received a sentence of seven to twenty-seven years' incarceration. *Id*. On March 9, 1970, a warrant for the defendant's arrest for violating the terms of his Marshall County probation was issued. *Id*. Despite the defendant's incarceration, the State did not serve the violation of probation warrant until November 10, 1972. *Id*.

The *Allen* Court addressed two issues in its resolution of the defendant's appeal: first, whether the trial court "acted beyond its power in revoking the suspension of sentence since that court's action came at a time which exceeded the maximum time ordered for the suspension," and second, whether "the two and one-half year delay in bringing [the] defendant to the revocation hearing" violated Article 1, section 9 of the Tennessee Constitution. *Id*. The *Allen* Court concluded that in prosecutions for violations of probation, "the statute of limitation is tolled by the issuance of the warrant and not by service of the warrant[.]" *Id*. at 717. It further held that "a probation revocation proceeding

- 7 -

is a continuation of the criminal prosecution, and as such, the defendant in the instant case has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation'" pursuant to Article I, section 9 of the Tennessee Constitution. *Id*. at 719. The *Allen* Court concluded, without elaboration as to when the defendant's right to a speedy trial attached, that following its "long[,] exhaustive examination of the technical record and the bill of exceptions[,] . . . [the defendant] was prejudiced by the two year, eight month delay." *Id*. This time period was consistent with calculating the delay from the issuance of the warrant.

The majority of this court's subsequent opinions on this issue have relied upon *Allen* to conclude that the right to a speedy trial attaches in prosecutions for violations of probation upon the issuance of the warrant or charging instrument accusing the defendant of violating his probation. *See, e.g.*, *State v. Herl*, No. W2020-01671-CCA-R3-CD, 2021 WL 4938138, at *2-3 (Tenn. Crim. App. Oct. 22, 2021), *no perm. app. filed*; *State v. McKee*, No. W2012-00797-CCA-R3-CD, 2013 WL 12181710, at *2 (Tenn. Crim. App. Mar. 7, 2013), *no perm. app. filed*; *State v. Hutchings*, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *5-6 (Tenn. Crim. App. June 16, 2009), *no perm. app. filed*; *State v. Meadows*, No. W2006-02534-CCA-R3-CD, 2007 WL 1215050, at *2-3 (Tenn. Crim. App. Apr. 24, 2007), *no perm. app. filed*; *State v. Matkin*, No. E2005-02701-CCA-R3-CD, 2007 WL 120048, at *5 (Tenn. Crim. App. Jan. 18, 2007), *perm. app. denied* (Tenn. May 14, 2007); *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1-2 (Tenn. Crim. App. Dec. 27, 2005), *no perm. app. filed*; *State v. Wilson*, No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at *2 (Tenn. Crim. App. May 16, 2001), *perm. app. denied* (Tenn. Oct. 29, 2001); *State v. Ralph*, No. M1999-01635-CCA-R3-CD, 2000 WL 775592, at *1-2 (Tenn. Crim. App. Jun. 16, 2000), *perm. app. denied* (Tenn. Dec. 27, 2000). The Defendant relies upon *Allen* and its progeny in support of his argument that his right to a speedy trial attached upon the issuance of the July 20, 2001 violation of probation warrant.

The State, in contrast, posits that the Tennessee Supreme Court's decision in *Utley* controls, and that the Defendant's right to a speedy trial attached upon the October 30, 2024 service of the violation of probation warrant. In *Utley*, an arrest warrant charging the defendant with armed robbery was issued in 1987. *Utley*, 956 S.W.2d at 491. The warrant was not served on the defendant until June 1992, despite his being in the State's custody for the majority of the intervening five years. *Id*. A grand jury returned an indictment charging the defendant with armed robbery in September of 1992, and the defendant moved to dismiss the charge in December of 1992. *Id*. The trial court granted the motion to dismiss, and this court affirmed. *Id*. However, upon review, the Tennessee Supreme Court held that "the issuance of an arrest warrant alone does not trigger a speedy trial analysis and that the right to a speedy trial is not implicated until there is an arrest or a formal grand jury accusation." *Id*. Accordingly, the Tennessee Supreme Court concluded that the defendant's right to a speedy trial did not attach until the warrant was served in 1992;

because the length of the delay between the service of the warrant and the motion to dismiss was only eight months, the *Utley* Court concluded the delay was not presumptively prejudicial and that the defendant's right to a speedy trial was not violated.[3] *Id*. at 494.

The State further relies upon this court's opinion in *State v. Tillery*. In *Tillery*, a divided panel of this court considered a defendant's claim that his right to a speedy trial was violated by the delay between the issuance of his violation of probation warrant and the prosecution thereof. *Tillery*, 2001 WL 921754, at *1. The *Tillery* Court, relying upon *Utley*, reasoned that "[b]ecause there is no formal grand jury accusation in a probation revocation proceeding, it would appear that an actual arrest for the probation violation would be the triggering factor for a speedy trial right." *Id*. at *2. In a footnote, the *Tillery* Court acknowledged its decision conflicted with then-recent cases which "cited *Allen* for the proposition that a lengthy delay between the issuance of a probation violation warrant and the hearing on the probation revocation may violate a defendant's right to a speedy trial" but nevertheless reasoned that *Utley* controlled. *Id*. n.6 (first citing *Wilson*, 2001 WL 523368, at *2; and then citing *Ralph*, 2000 WL 775592, at *1-2). Judge Tipton wrote separately, concurring in the results but reasoning that "the defendant's speedy trial right was triggered when the detainer resulting from his revocation warrant was lodged." *Tillery*, 2001 WL 921754, at *6 (Tipton, J., concurring). Judge Witt concurred in the results without issuing a separate opinion. *Id*. at *1.

This court was called upon to resolve the conflict noted in *Tillery*'s footnote nearly eight years later in *State v. Hutchings*. In that case, the defendant pled guilty in Williamson County to possession of contraband in a penal institution, for which the trial court imposed a sentence of eight years' incarceration, which it subsequently suspended to ten years' probation. *Hutchings*, 2009 WL 1676057, at *1. While serving his probation, the defendant was arrested in Mississippi on a federal charge of possession of approximately one hundred pounds of marijuana with the intent to sell, and the Williamson County Circuit Court issued a violation of probation warrant on June 22, 1998. *Id*. The defendant was briefly incarcerated in Mississippi, and his counsel spoke with the Williamson County district attorney general's office and the defendant's probation officer on multiple occasions between January and July of 1999. *Id*. However, the defendant's violation of probation warrant was not served until November 27, 2007, following his arrest in Georgia and subsequent extradition to Tennessee. *Id*. at *2. The defendant filed a motion to dismiss the violation of probation warrant on speedy trial grounds, which the trial court denied. *Id*. The trial court thereafter held a revocation hearing and revoked the defendant's probation.

---

[3] In support of this holding, the *Utley* Court noted that "a defendant has other protections during delays prior to arrest, in particular, the applicable statute of limitations and the right to due process." *Id*. at 493. It further reasoned that "because due process rights also protect against unreasonable delays, we reject the contention that allowing the issuance of a warrant to commence the prosecution for the purpose of the statute of limitations but not trigger the right to a speedy trial is 'manifestly unfair.'" *Id*. at 494.

*Id*. at \*4.  On appeal, the defendant maintained that his right to a speedy trial was violated by the delay between the issuance of the violation of probation warrant and its prosecution. *Id*. at \*4.  In response, the State argued that *Utley* and *Tillery* controlled and that, accordingly, the length of the delay should be calculated from the date of the service of the violation of probation warrant, rather than its issuance.  *Id*. at \*5.  The *Hutchings* Court disagreed, reasoning that because *Utley* involved a prosecution for a new criminal offense rather than a violation of probation, *Allen* was more directly on point and controlled:

> This issue was squarely addressed in *Allen*, and we decline to extend *Utley* to probation revocation proceedings in the context of when a defendant's speedy trial right is triggered.  It is precisely because there is no formal grand jury accusation in probation revocation proceedings, as opposed to a criminal charge, that we will not extrapolate the rationale from *Utley* to the present situation.  Probation revocation proceedings are commenced when the trial judge issues the warrant; the warrant serves as the formal accusation.  No further action is required.  In our view, the issuance of the warrant is the triggering mechanism.

*Id*. at \*6 (internal citations and footnote omitted).  The *Hutchings* Court further noted that, despite the conflict noted in *Tillery*'s footnote, applying *Allen* rather than *Utley* continued to be the prevailing viewpoint.  *Id*.

The majority viewpoint was questioned most recently in *State v. Moon*, in which a panel of this court, while reaffirming that a defendant maintains his or her right to a speedy trial during probation revocation proceedings, nevertheless concluded that the right "attaches once the probationer is arrested for the revocation warrant—or otherwise under the restraints of an arrest—and not when the revocation warrant is issued."  *Moon*, 2025 WL 1672885, at \*11.  In reaching this conclusion, the *Moon* Court reasoned:

> While acknowledging the minority nature of our view among prior decisions of this court, the reasoning in *Utley* alongside federal law in the context of criminal charges, leads us to agree more with the *Tillery* opinions that it is the arrest, restraint of an arrest, or indictment that makes an individual 'accused,' triggering the speedy trial right.  We agree that the issuance of a probation violation warrant serves as a type of accusation.  However, the *Utley* court reaffirmed that the formal accusation attaching the speedy trial right takes the form of grand jury action or an arrest.  As there is no grand jury action in a probation revocation proceeding, we decline to look for a substitute proceeding and instead apply the alternative triggering mechanism for the speedy trial right—the arrest or restraints of an arrest.

*Id*. (internal citation omitted). The *Moon* Court also reiterated that a probationer maintains constitutional protections against prejudicial pre-accusatorial delays via his or her right to due process and the statutory requirement that violations of probation warrants be prosecuted within the applicable probationary period. *Id*. at *12.

The Defendant argues that *Allen* and *Utley* are "perfectly capable of coexisting together." We agree, but not for the reasons the Defendant proposes. The Defendant asserts that *Utley* announced a general rule that in criminal proceedings, a defendant's right to a speedy trial attaches upon the defendant's becoming formally accused through the service of an arrest warrant or through the physical restraint of an arrest, but that *Allen* represents an exception to this general rule and commands that in the context of probation revocation proceedings, a probationer's right to a speedy trial attaches upon the issuance of a violation of probation warrant.

We disagree with this reading of the Tennessee Supreme Court's precedents. Although the *Allen* Court concluded that the probationer defendant's right to a speedy trial was violated by the more-than-two-year delay between the issuance of the violation of probation warrant and its prosecution, it did so in a single sentence without further explanation. *Allen*, 505 S.W.2d at 719. Since *Allen*, the Tennessee Supreme Court has had several opportunities to consider in more detail the specific issue of when a defendant's right to a speedy trial attaches. The *Utley* Court explicitly held that the issuance of a warrant in a criminal prosecution is not sufficient to trigger a speedy trial analysis, and the Tennessee Supreme Court has subsequently affirmed that holding. *Utley*, 956 S.W.2d at 492; *see also State v. Carico*, 968 S.W.2d 280, 284 (Tenn. 1998) ("[I]n determining if there has been a violation of the constitutional right to a speedy trial, only the time between the commencement of adversarial proceedings and the commencement of the trial will be considered[,]" while in the context of constitutional due process violations, "the time between the commission of the offense and the commencement of prosecution will also be considered."); *State v. Simmons*, 54 S.W.3d 755, 758-59 (Tenn. 2001) (holding that speedy trial rights "are implicated only when there is an arrest or a formal accusation."); *State v. Berry*, 141 S.W.3d 549, 568 (Tenn. 2004) ("The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial.") (internal quotation marks omitted) (quoting *State v. Vickers*, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997)). Although, to be sure, these decisions do not consider claims of speedy trial violations in the context of probation revocation proceedings, we find the logical conclusion of the Defendant's claim that *Allen* serves as an exception to the general rule—and, thus, that the Tennessee Constitution affords greater speedy trial protections to probationers than to criminal defendants—dubious.

In Tennessee, criminal defendants have a right to a speedy trial, which attaches at the commencement of adversarial proceedings. *Utley*, 956 S.W.2d at 492. Under Article

1, section 9 of the Tennessee Constitution, probationers enjoy the same speedy trial rights as criminal defendants at trial. *Allen*, 505 S.W.2d at 719. This protection is greater than that afforded by the Sixth Amendment to the United States Constitution. One year before the Tennessee Supreme Court issued its decision in *Allen*, the United States Supreme Court held, in *Gagnon v. Scarpelli*, that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Accordingly, the *Gagnon* Court held that a probationer, having already been convicted of a crime, is not entitled to the full panoply of rights afforded under the United States Constitution. *Id.* at 789. The United States Supreme Court recently reaffirmed this principle of federal constitutional law, holding that a criminal defendant's Sixth Amendment right to a speedy trial "does not extend beyond conviction, which terminates the presumption of innocence." *Betterman v. Montana*, 578 U.S. 437, 448-49 (2016). While bound by *Allen*'s holding that, under the Tennessee Constitution, probationers maintain their right to a speedy trial, we nevertheless find persuasive the United States Supreme Court's reasoning in *Betterman*, and we reject the Defendant's proposition that the Tennessee Supreme Court affords greater speedy trial protections to the probationer than to the criminal defendant at trial. Accordingly, we conclude that the Defendant's right to a speedy trial was triggered upon the service of the violation of probation warrant rather than its issuance.[4]

## 2. Length of the Delay

As noted above, the length of the post-accusation delay is a threshold question to determine whether a defendant's right to a speedy trial has been violated. *Utley*, 956 S.W.2d at 494. In this case, the violation of probation warrant was served on the Defendant on October 30, 2024. The Defendant filed a motion to dismiss the violation of probation warrant on December 17, 2024, which the trial court heard and denied on December 19, 2024. Accordingly, the post-accusation delay was slightly less than two months. Because this delay is not presumptively prejudicial, we need not consider the remaining *Barker* factors. *Barker*, 407 U.S. at 530; *Utley*, 956 S.W.2d at 494. The Defendant's right to a speedy trial was not violated, and the trial court appropriately denied his motion to dismiss.

## B. Revocation

The Defendant also argues that the trial court erred by fully revoking his probation because the evidence was insufficient to establish a non-technical probation violation. Specifically, he contends that the evidence presented at the revocation hearing was

---

[4] The record does not reflect when or if a detainer was ever placed on the Defendant. Therefore, we leave unaddressed Judge Tipton's position in *Tillery* that a lodged detainer is an actual restraint that triggers a defendant's speedy trial right.

insufficient to establish by a preponderance of the evidence that he absconded from his probation. He also argues that the trial court failed to find that his Oklahoma convictions constituted a new felony or Class A misdemeanor under Tennessee law at the time he committed the underlying offenses, and thus failed to classify them as a non-technical violation of the terms of his probation. The State responds that these claims are waived and that the Defendant is not entitled to plain error relief. In his reply brief, the Defendant contends he is entitled to plain error relief because the trial court's full revocation amounted to a breach of a clear and unequivocal rule of law.

Probation revocation proceedings are two-pronged: first, the trial court must determine, by a preponderance of the evidence, whether the defendant has violated a condition of his or her probation such that revocation is warranted; and if so, what consequences should apply upon revocation. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). Both determinations are discretionary; as such, we review both determinations for an abuse of discretion accompanied by a presumption of reasonableness, so long as the trial court places sufficient findings and its reasoning in support of its decisions for both prongs on the record. *Id*. at 758-59. There are two categories of probation violations—technical and non-technical—and the consequences available to the trial court for imposing upon a defendant who violates the terms of his or her probation vary depending on the type of probation. Tenn. Code Ann. §§ 40-35-311(e)(1), (2); *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024). As relevant here, non-technical violations include a defendant's absconding from probation or his or her commission of a new felony or Class A misdemeanor. Tenn. Code Ann. § 40-35-311(e)(2). Upon finding, by a preponderance of the evidence, that a defendant has committed a non-technical violation of his or her probation, the trial court may fully revoke the defendant's probation. *Id*.; *Rand*, 696 S.W.3d at 103-04.

The Defendant argues that the trial court erred by concluding that the Defendant absconded from his probation and that his Oklahoma convictions equated to felonies or Class A misdemeanors under Tennessee law. He contends there was insufficient proof to establish either of these non-technical violations. Thus, the trial court could not have found, by a preponderance of the evidence, that the Defendant violated the terms of his probation, warranting full revocation. However, as the State notes in response, the Defendant failed to present these arguments to the trial court during the December 19, 2024 probation revocation hearing. The vast majority of the proof offered at the hearing concerned the Defendant's speedy trial claim, with particular emphasis given to the length of the delay between the issuance of the July 20, 2001 violation of probation warrant and its subsequent service on October 30, 2024. While the Defendant briefly referenced the warrant's allegation that he had failed to report since May 2000, he did so in the context of his speedy trial claim and not in an effort to challenge the sufficiency of the State's proof of his absconding. The trial court found that the Defendant had failed to report and had

- 13 -

absconded. Although the two violations share a similar factual basis, a defendant's failure to report constitutes a technical violation, while his absconding from probation constitutes a non-technical violation. Tenn. Code Ann. § 40-35-311(e)(2), (g); *Rand*, 696 S.W.3d at 104-05; *see also State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *7 (Tenn. Crim. App. Nov. 28, 2023) (noting the distinction between absconding, "a non-technical revocable violation," and failure to report, "a technical nonrevocable violation"), *no perm. app. filed*. Likewise, although the Defendant now contends that the trial court erred by failing to conduct a foreign-judgments test to determine whether his Oklahoma conviction qualified as a subsequent felony or a Class A misdemeanor under then-applicable Tennessee law, he did not first raise this challenge to the trial court. The extent of the Defendant's discussion regarding his Oklahoma conviction came in the context of his speedy trial argument in which he alleged that had the State lodged a detainer warrant after the trial court issued a violation of probation warrant, then the Defendant "could have been transported back to face the original complaint without delay."

In sum, the Defendant neglected to present any rebuttal to the State's arguments that the Defendant had committed non-technical violations of his probation and instead focused his arguments on his speedy trial claims. It is a fundamental principle of appellate procedure that issues must first be presented to the trial court in order to preserve them for appellate review. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also Bristol*, 654 S.W.3d at 925 ("[i]t has long been the general rule that questions not raised in the trial court will not be entertained on appeal.") (internal quotation marks omitted) (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)). Because the Defendant failed to object during the revocation hearing to the trial court's conclusion that he had committed two non-technical violations of his probation by absconding from his probation and by committing new offenses in Oklahoma, he waived such an objection on appeal. *See State v. Ballard*, No. E2024-01315-CCA-R3-CD, 2025 WL 1651107, at *3 (Tenn. Crim. App. June 11, 2025) ("[The d]efendant cannot now challenge the trial court's finding of a non-technical violation when [the d]efendant failed to object to the State's assertion that he committed a Class A misdemeanor and affirmatively represented to the trial court that an injury had occurred in the accident."), *no perm. app. filed*.

Accordingly, our review of the Defendant's claim that the trial court erred by fully revoking his probation is limited to plain error. A defendant may only receive relief under plain error review if he or she proves all five of the following prerequisites:

> (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been violated; (4) the accused must not have

waived the issue for tactical reasons; and (5) consideration of the error is necessary to achieve substantial justice.

*State v. Rimmer*, 623 S.W.3d 235, 255-56 (Tenn. 2021) (citing *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016)).  If a defendant fails to prove any one of the five plain error factors, then he or she is not entitled to plain error relief, and the appellate court is not required to analyze the remaining factors.  *State v. Bledsoe*, 226 S.W.3d 349, 358 (Tenn. 2007).  In order to qualify as plain error, "[t]he magnitude of the error must have been so significant that it probably changed the outcome of the trial."  *Id*. at 354 (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994) (internal quotation marks omitted)); *see also* Tenn. R. App. P. 36(b).

As the record in this case includes the violation of probation warrants and a transcript of the revocation hearing, the record clearly establishes what occurred in the trial court, and the first prerequisite for plain error review is satisfied.  *Rimmer*, 623 S.W.3d at 255.  Regarding the second prerequisite for plain error review, the Defendant maintains that the evidence was insufficient to establish he committed non-technical violations by absconding and by committing subsequent criminal offenses in Oklahoma; in the absence of such evidence, the Defendant posits that the trial court's full revocation of his probation violated a clear and unequivocal rule of law.

We first consider whether the trial court's conclusion that the Defendant committed two non-technical violations breached a clear and unequivocal rule of law.  The Tennessee Criminal Sentencing Reform Act of 1989 does not define what acts constitute "absconding"; however, this court has previously held that to abscond is "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process," and "[t]o hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process."  *State v. Wakefield*, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003) (internal quotation marks omitted) (quoting Black's Law Dictionary 8 (6th ed. 1990)), *no perm. app. filed*.  Proof by a preponderance of the evidence that a defendant has absconded constitutes a non-technical violation of probation.  Tenn. Code Ann. § 40-35-311(g); *see also Butler*, 2023 WL 8234319, at *7.  The trial court may consider, among other facts, the following circumstantial evidence in inferring that a defendant has absconded:

- a probationer's failure to use reasonable efforts to inform the probation officer of a change in the probationer's contact information, residential address, or employment;

- the extent to which the probationer has failed to use reasonable efforts to return contact or submit to supervision after knowledge (or a belief) that supervision has been attempting to communicate with the probationer;

- statements by the probationer confirming that the probationer intentionally or knowingly avoided supervision, including statements that the probationer refrained from establishing contact for fear of a revocation or incarceration;

- the extent to which the probationer has left or remained outside the jurisdiction of the trial court or the probation officer;

- the degree to which the probationer has acted to avoid an arrest on a known or suspected violation warrant or court order to report;

- the extent to which the probationer has sought to evade arrest or misrepresent his or her identity when encountering law enforcement;

- the length of time that the probationer has intentionally or knowingly remained out of contact with supervision; or

- the degree to which other violations support the inference that the probationer's hiding, concealment, or absence may be to avoid legal process or supervision.

*Rand*, 696 S.W.3d at 104-05 (citations omitted).

The record indicates that the Defendant's probation was transferred to Kern County, California, on October 13, 1999. In May of 2000, the Defendant reported to the Kern County Probation Department and provided an address in a different part of California. Thereafter, the Defendant failed to respond to a scheduled appointment on May 4, 2001. While the Defendant characterizes this as proof only of a single failure to report, the record also indicates that the Defendant at some point afterwards travelled to Pittsburg County, Oklahoma, where he was charged with feloniously pointing a firearm and two counts of public intoxication in October of 2001. Thereafter, the Defendant remained at large for twenty-three years. The record also includes a copy of the terms and conditions of the Defendant's probation for his Tennessee offenses, which included among its requirements that the Defendant "inform [his] probation officer before changing [his] residence or employment" and further that he "get the permission of [his p]robation [o]fficer before leaving the [s]tate." The Defendant signed this agreement on June 23, 1997. In full knowledge of these terms and conditions, the Defendant nevertheless left the confines of

his courtesy supervision in California, prompting the Kern County Probation Department to terminate it, and travelled to Oklahoma, where he committed subsequent criminal offenses. The record does not indicate that the Defendant ever attempted to notify Tennessee of his whereabouts or to notify law enforcement of the states in which he committed criminal offenses that he was serving a suspended sentence imposed by the Henderson County Circuit Court. From these facts, the trial court rationally concluded that the Defendant absconded by a preponderance of the evidence. Accordingly, the Defendant is unable to establish a breach of a clear and unequivocal rule of law on this issue.

The Defendant also asserts that he is entitled to plain error review of his claim that the trial court erred by failing to conduct a foreign-judgments test for his Oklahoma conviction before determining whether he had committed a non-technical violation of probation by committing a felony or a Class A misdemeanor. The November 19, 2024 amended violation of probation warrant alleged that the Defendant had committed a non-technical violation of his probation by entering a plea of *nolo contendere* to feloniously pointing a firearm and public intoxication in Oklahoma. A copy of the deferment order memorializing these convictions and listing the applicable statutes was introduced as an exhibit at the revocation hearing. At the conclusion of the revocation hearing, the trial court concluded that the evidence established that the Defendant was "convicted in the State of Oklahoma for committing a new felony offense while he's on probation out of Tennessee for a felony offense" and, accordingly, that the Defendant "violated the terms and conditions of his probation in a substantial way[.]"

The Defendant asserts that the trial court should have conducted a foreign-judgments analysis to determine whether the Oklahoma statute for feloniously pointing a firearm was equivalent to a felony or Class A misdemeanor under Tennessee law, before determining that the Defendant had committed a non-technical violation. While Tennessee Code Annotated section 40-35-311(g) specifically notes that a probationer's commission of a felony or Class A misdemeanor constitutes a non-technical violation, both the State and the Defendant concede that it does not explicitly provide a mechanism for determining whether a probationer's commission of such an offense in another state constitutes a non-technical violation. Instead, the parties contend that this court should look to other areas of Tennessee law to determine whether the Defendant's Oklahoma conduct constituted an equivalent felony or Class A misdemeanor in Tennessee.

We decline this invitation. In interpreting statutes, this court's foremost consideration is to give effect to the General Assembly's legislative intent without either restricting or expanding the statute beyond its intended scope. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). In doing so, we presume that the General Assembly "knows the law and makes new laws accordingly." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). The principle of statutory interpretation *expressio unius est exclusio alterius*, or

"the expression of one thing implies the exclusion of others," is helpful in this analysis. *Richards v. Vanderbilt Univ. Med. Ctr.*, 706 S.W.3d 319, 324 (Tenn. 2025).  The State and the Defendant both direct our attention towards the inclusion of the foreign-judgments test in other contexts under Tennessee law: namely, in determining a defendant's range of punishment.  In that context, the General Assembly has expressly provided that a defendant's

> [p]rior convictions include convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state.  In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

Tenn. Code Ann. §§ 40-35-106(b)(5), -107(b)(5), -108(b)(5); *see also State v. Little*, No. M2022-00738-CCA-R3-CD, 2023 WL 4930073, at *3 (Tenn. Crim. App. Aug. 2, 2023), *no perm. app. filed*.  The General Assembly has similarly required trial courts to conduct a foreign-judgment test in criminal proceedings in other contexts.  *See* Tenn. Code Ann. §§ 39-13-218(b)(2) (in calculating the number of a defendant's prior convictions in prosecutions for aggravated vehicular homicide); 39-13-523(a)(6)(B) (in determining whether a defendant qualifies as a child sexual predator); 39-17-1324(i)(2)(B) (in determining the felony classification and sentencing range for defendants convicted of armed dangerous felonies); 40-35-121(a)(4)(B)(ii) (in sentencing for defendants with multiple convictions of criminal gang offenses); 40-35-501(k)(3)(B), (u)(3)(A)(ii), (cc)(3)(B) (in determining release eligibility for defendants convicted of certain felony offenses); 40-39-207(g)(3)(B) (in determining whether an offender required to register as a sex offender is required to continue to comply with the registration, verification, and tracking requirements of the sex offender registry for the offender's life).

In providing that a probationer may commit a non-technical violation by committing a felony or Class A misdemeanor, however, the General Assembly made no reference to the foreign-judgments test it specifically delineated elsewhere in the Code.  *See* Tenn. Code Ann. § 40-35-311(g).  The General Assembly's omission of a foreign-judgments test (and, indeed, its omission of any reference to foreign convictions whatsoever) in the context of revocation proceedings tends to indicate that it intended to refrain from adopting such a mechanism in that context.

Regardless, the question of whether a trial court is required to conduct a foreign-judgments test in the context of probation revocation proceedings was not presented to the trial court, nor is it before this court.  We nevertheless undertake the above analysis to reiterate that it is less than clear that a clear and unequivocal rule of law was breached, such

that the Defendant would be entitled to plain error relief on his claim that there was insufficient evidence before the trial court to warrant the full revocation of his probation due to his commission of a felony. Moreover, we note that having already concluded that the trial court did not err by fully revoking the Defendant's probation due to his absconding, the Defendant is unable to establish that consideration of this error is necessary to achieve substantial justice. *Rimmer*, 623 S.W.3d at 256. The Defendant is not entitled to relief.

## III. CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the trial court.

s/ *Steven W. Sword*
_____
STEVEN W. SWORD, JUDGE